KLEIN CHOCOLATE COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 47164.   Filed May 29, 1959.

*Richard B. Barker, Esq.,* and *James F. McMullan, Esq.,* for the
petitioner.

*Stephen P. Cadden, Esq.,* for the respondent.

446

448

Turner, *Judge:* Except for the variations permitted and authorized under section 22(d) of the Internal Revenue Code of 1939, the use of inventories in the determination of income with respect to all years here pertinent is governed and controlled by the provisions of section 22(c) of the 1939 Code [5] and the regulations thereunder, which statutory provisions and regulations have existed and continued without substantial change since the Revenue Act of 1918 and Regulations 45, promulgated pursuant thereto.

In section 22(c), it is provided that inventories are to be used whenever in the opinion of the Commissioner their use is necessary "in order clearly to determine the income of any taxpayer," and are to be taken "upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." By section 29.22(c)–1 of Regulations 111, promulgated under section 22(c), it is declared that "[i]n order to reflect the net income correctly," inventories at the beginning and end of each taxable year are necessary "in every case in which the production, purchase, or sale of merchandise is an income-producing factor." And further, that the inventory should include all finished or partly finished goods and the raw materials and supplies which have been acquired for sale or which will physically become a part of the merchandise produced and intended for sale.

Noting the statutory requirements that inventories must conform as nearly as may be to the best accounting practice in the particular trade or business and must clearly reflect income, and that for that reason, "inventory rules" cannot be uniform, it is provided in section 29.22(c)–2 of the regulations that in order clearly to reflect income, the inventory practice of the taxpayer should be consistent from year to year, and that greater weight is to be given to consistency than to any particular method of taking inventory or basis of valuation "so long as the method or basis used is substantially in accord with these regulations." Stating that the bases of valuation most commonly used by business concerns, and which meet the requirements of the statute, are (a) cost and (b) cost or market, whichever is lower, and "except as to those goods inventoried under the elective method authorized by section 22(d)," discussed hereafter, section 29.22(c)–2, as did prior corresponding regulations, also provides that "[i]n respect of normal goods, whichever basis is adopted must be applied with reasonable consistency to the entire inventory" and that "[g]oods

[5] SEC. 22. GROSS INCOME.

(c) INVENTORIES.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

taken in the inventory which have been so intermingled that they cannot be identified with specific invoices will be deemed to be the goods most recently purchased or produced, and the cost thereof will be the actual cost of the goods purchased or produced during the period in which the quantity of goods in the inventory has been acquired."

Under section 29.22(c)–3 of the said regulations, cost means (1) in the case of merchandise on hand at the beginning of the year, the inventory price of such goods, (2) in the case of merchandise purchased since the beginning of the year, the invoice price, subject to indicated adjustments, and (3) in the case of merchandise produced by the taxpayer since the beginning of the year, "(a) the cost of raw materials and supplies entering into or consumed in connection with the product, (b) expenditures for direct labor, (c) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return of capital, whether by way of interest or profit." It is further provided that in "any industry in which the usual rules for computation of cost of production are inapplicable, costs may be approximated upon such basis as may be reasonable and in conformity with established trade practice in the particular industry."

One such case specifically dealt with in the regulations is that of the retail merchant who regularly uses what is known as the "retail method" of ascertaining or arriving at the cost of his merchandise for inventory purposes. Under section 29.22(c)–8 of the regulations, a retail merchant is permitted to inventory his merchandise by the retail method, provided "(1) that the use of such method is designated upon the return, (2) that accurate accounts are kept, and (3) that such method is consistently adhered to unless a change is authorized by the Commissioner." Although under the retail method the merchandise is priced at cost, cost is not determined or arrived at according to the specific items or quantities of the goods making up the merchandise in the inventory. The first step is to list by items and quantities the merchandise by departments or classes of the goods being inventoried at the retail prices at which the merchandise is carried for sale. After this is done, the inventory is at all times expressed and dealt with in terms of dollars, and the inventory cost is ascertained or arrived at by applying to the dollar amount representing the total of the said retail prices the factor or percentage which will eliminate therefrom "as accurately as may be" that amount or portion of the dollar amount of such total of the retail prices which in fixing the retail prices had been added or included "to cover selling and other expenses of doing business and for the margin of profit." The factor or percentage so applied to eliminate the margin of profit

and expenses of doing business from the total of the said retail prices and to arrive at inventory cost must be determined with reference to the department or the class of goods which is being inventoried, the regulation providing that under the retail method, a taxpayer maintaining more than one department in his store or who deals in classes of goods carrying different percentages of profit should not use a percentage of profit based upon an average of his entire business, but should compute and use the proper percentage for the respective departments or classes of goods.

Such inventorying of goods as dollars rather than in terms of the physical items making up the inventory is sometimes referred to as the dollar-value method of pricing inventories.

To the extent specified therein and subject to stated conditions, a taxpayer may under section 22(d), as amended by the Revenue Act of 1939,[6] vary or change his method of taking inventory from that

---

[6] SEC. 22. GROSS INCOME.

(d)(1) A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c)) in inventorying goods specified in the application required under paragraph (2):

(A) Inventory them at cost;

(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; and

(C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

(2) The method described in paragraph (1) may be used—

(A) Only in inventorying goods (required under subsection (c) to be inventoried) specified in an application to use such method filed at such time and in such manner as the Commissioner may prescribe; and

(B) Only if the taxpayer establishes to the satisfaction of the Commissioner that the taxpayer has used no procedure other than that specified in subparagraphs (B) and (C) of paragraph (1) in inventorying such goods to ascertain the income, profit, or loss of the first taxable year for which the method described in paragraph (1) is to be used, for the purpose of a report or statement covering such taxable year (i) to shareholders, partners, or other proprietors, or to beneficiaries, or (ii) for credit purposes.

(3) The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income.

(4) In determining income for the taxable year preceding the taxable year for which such method is first used, the closing inventory of such preceding year of the goods specified in such application shall be at cost.

(5) If a taxpayer, having complied with paragraph (2), uses the method described in paragraph (1) for any taxable year, then such method shall be used in all subsequent taxable years unless—

(A) With the approval of the Commissioner a change to a different method is authorized; or

(B) The Commissioner determines that the taxpayer has used for any such subsequent taxable year some procedure other than that specified in subparagraph (B) of paragraph (1) in inventorying the goods specified in the application to ascertain the income, profit, or loss of such subsequent taxable year for the purpose of a report or statement covering such taxable year (i) to shareholders, partners, or other proprietors, or beneficiaries, or (ii) for credit purposes; and requires a change to a method different from that described in paragraph (1) beginning with such subsequent taxable year or any taxable year thereafter.

In either of the above cases, the change to, and the use of, the different method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income.

required and established under section 22(c) and the regulations thereunder. Instead of deeming goods which have been so intermingled that they cannot be identified with specific invoices to be the goods most recently purchased or produced, as required under section 29.22(c)–2 of the regulations, a taxpayer may under section 22(d) treat goods remaining on hand at the close of the taxable year as being "[f]irst, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year." The goods must be inventoried at cost, however, and no basis other than cost is permissible. And whereas under section 22(c) the method of inventory adopted "must be applied with reasonable consistency to the entire inventory," see regulation 29.22(c)–2 above, a taxpayer may under section 22(d) elect to have the method of inventory authorized therein apply to some but not all of the items in its inventory, in which case only goods specified in the application required to be filed may be inventoried by this so-called last-in, first-out method of inventorying goods.[7]

By subsection (3) of section 22(d), it is required that the change to and use of the last-in, first-out method of taking inventory must be in accordance with the regulations the Commissioner prescribes as necessary in order that the use of the said method may clearly reflect income. In subsection (5), it is provided that a taxpayer, once having complied with the requirements for the use of the said last-in, first-out method of taking inventory, must use that method in all subsequent taxable years, unless with the approval of the Commissioner a change to a different method should be authorized.

In section 29.22(d)–1 of Regulations 111, applicable to the years herein, it is provided that any taxpayer permitted or required to take inventories, pursuant to the provisions of section 22(c) of the statute, may elect with respect to the goods specified in his application and properly subject to inventory, to compute his opening and closing inventory in accordance with the method provided by section 22(d), as amended, and further, that this method is not dependent upon the character of the business in which the taxpayer is engaged or upon the identity or want of identity through commingling of any of the goods on hand. In section 29.22(d)–3 of the regulations, it is provided that the application for such change must be accompanied by an analysis of all inventories of the taxpayer as of the beginning and

---

[7] Section 22(d) was first enacted in the Revenue Act of 1938, and as first enacted, the election therein was available only to the producers and processors of nonferrous metals and to tanners. Under its provisions, a taxpayer whose principal business was the production or processing of the said nonferrous metals became entitled to elect to take his inventory of raw materials not yet included in goods in process or finished goods, and which were so intermingled that they could not be identified with specific invoices, on a last-in, first-out basis. In the case of tanners, the election to use the last-in, first-out method of inventorying goods could also be extended to raw materials included in goods in process and in finished goods.

as of the end of the taxable year for which the method is proposed first to be used. A requirement relating specifically to manufacturers is that the analysis shall "show in detail the manner in which costs are computed with respect to raw materials, goods in process, and finished goods, segregating the products (whether in process or finished goods) into natural groups on the basis of either (1) similarity in factory processes through which they pass, or (2) similarity of raw materials used, or (3) similarity in style, shape, or use of finished products. Each group of products shall be clearly described." It is further provided that "[w]hether or not the taxpayer's application for the adoption and use of the elective inventory method should be approved, and whether or not such method, once adopted, may be continued, and the propriety of all computations incidental to the use of such method will be determined by the Commissioner in connection with the examination of the taxpayer's returns." [8]

In neither the statute nor the regulations have we been able to find anything which suggests that for the purposes of section 22(d) there was any intent to authorize or require any changes in accepted and established methods of inventorying goods other than those required and necessary to make the provisions of section 22(d) effective, thus leaving section 22(c) and the regulations thereunder as controlling in all other respects. The changes required and authorized would be those reasonably necessary and essential to the treating of the goods remaining on hand at the close of the taxable year as being the goods on hand at the beginning of the year to the extent thereof, and such adjustments or changes as might be necessary in ascertaining or arriving at cost of goods to be so treated as having been on hand at the beginning of the year and of any remainder of goods which were to be treated as having been acquired during the taxable year. See *Hutzler Brothers Co.*, 8 T. C. 14, and *Edgar A. Basse*, 10 T. C. 328.

In *Hutzler Brothers Co.*, decided January 14, 1947, the taxpayer was the operator of a large retail department store and by proper application filed with its return for the fiscal year ended January 31, 1942, it had elected under section 22(d) of the 1939 Code to price its inventory on the last-in, first-out basis. It had regularly taken its inventory and determined the cost of its merchandise by departments by the retail method as authorized and permitted by the respondent, regulation section 29.22(c)–8, *supra*, and in adopting the elective method under section 22(d), it continued the use of the retail method in arriving at and expressing the cost of its inventory on the last-in, first-out basis. In so doing, it took a physical inventory of its merchandise for each department at the close of the year at the retail

---

[8] Regulations 111 were not in fact promulgated until October 6, 1943, after petitioner's application to inventory its goods under section 22 (d) had been filed, but the above sections 29.22(d)–1 and 29.22(d)–3 were in all of the above respects similar to sections 19.22(d)–1 and 19.22(d)–3 of the prior Regulations 103, approved January 29, 1940.

prices at which the merchandise was carried for sale, as it had done theretofore. As the next step, and for the purpose of treating the goods on hand in the closing inventory of the department as the goods on hand in its opening inventory to the extent thereof, it applied to the total dollar amount of the closing inventory at retail prices a factor representing the percentage of the average rise in retail prices during the year to arrive at the total dollar amount of its closing inventory at beginning of the year retail prices. When the dollar amount of the closing inventory of the department at opening inventory retail prices had been so determined, such dollar value of the closing inventory was treated as having been in the opening inventory to the extent of the amount of the opening inventory, also expressed at retail prices, without any matching of particular articles of goods on hand at the close of the year with similar articles on hand at the beginning of the year. Having so determined the amount of the closing inventory which was to be treated as having been in the opening inventory, it ascertained or arrived at the beginning of the year cost thereof by the retail method, namely, by applying the factor which would eliminate the amount or portion of the total of the retail prices for the department which in fixing retail prices had been added or included to provide the margin of profit and to cover selling cost and other expenses of doing business. Any excess of the closing inventory over the amount to be treated as having been in opening inventory was readjusted by applying the department index figure for the increase in prices during the year to the retail prices current at the end of the year and then similarly reduced by the proper factor to determine the end of the year cost. It was the position of the Commissioner that in determining the goods in the closing inventory which were to be treated as goods on hand in the opening inventory, for section 22(d) purposes, the inventories had to be expressed in specific items and quantities of goods and the items and quantities matched as between closing and opening inventories, and that the retail method of reducing the opening and closing inventories to dollars as the common denominator and the subsequent matching of dollars without regard to the matching of particular articles of goods was not permissible under the statute. The retail method being a recognized and established method of taking inventory for retail merchants under section 22(c), see section 29.22(c)-8, and Hutzler Brothers having regularly taken its inventory by that method, it was held that it had properly continued its use of the said retail method in inventorying its goods on a last-in, first-out basis under section 22(d).

In *Edgar A. Basse, supra,* decided February 19, 1948, the taxpayer was engaged in the operation of a chain of retail food stores and his established method of inventorying the merchandise in his stores

was, and had been, by the retail method, and this Court, following *Hutzler Brothers Co.*, *supra*, likewise upheld the continued use of the retail method of taking the store inventories for the purposes of section 22(d). The Commissioner had also determined that Basse had not satisfied the requirements of section 22(d) in inventorying the merchandise in his warehouse, in that similarly he had failed to match particular articles of goods on hand at the close of the year with those in his opening inventory. The warehouse merchandise was made up of approximately 2,000 items and was grouped into 27 classifications. These classifications were set up on a departmental basis according to customers' demands and corresponded with those in general use in the chainstore retail grocery business, and though the number of items in a classification might vary considerably from the number in another classification, the items in any given classification were closely related in type and character. An actual physical inventory of the goods in each classification was separately taken and priced at both end of the year and beginning of the year costs. After this was done, the aggregate dollar amount of the closing inventory at opening inventory cost for the particular classification was then matched with the dollar amount of the opening inventory for that classification and the dollar amount of the closing inventory up to the amount of the opening inventory was treated as having been on hand in the opening inventory. Where, on such matching of the dollar amounts of the opening and closing inventories for any classification there was an excess of closing inventory over opening inventory, the year-end cost of such excess was determined by the application to such excess of the percentage of increase of cost factor for the particular classification during the year. Taking into account the holding in *Hutzler Brothers Co.*, *supra*, the method followed by the taxpayer in determining the goods in the closing inventory which were to be treated as goods included in the opening inventory and the amount to be treated as the increase during the year and the cost of such increase was approved.

In the instant case, petitioner's application for the adoption of the elective method of taking inventory, as provided by section 22(d), was filed with its 1942 return, and its first use of that method was in that return. The goods in the 1942 opening inventory thus became the goods which were to be treated as goods in the closing inventory for each succeeding year so long as and to the extent that they continued to be matched by properly comparable goods in each succeeding closing inventory. In taking its closing inventories for each of the years 1946 and 1947, the years herein, and for the purpose of applying section 22(d), petitioner did not match or compare the goods in the said closing inventories with the goods in the 1942 opening inventory according to the physical characteristics or composi-

tion or number of units. It did actually count and list the goods on hand separately according to the categories or classifications by or under which such goods were acquired, accounted for, and used in its operations. In other words, the cocoa beans on hand were separately counted and listed as cocoa beans, and the same course was followed with respect to the other major categories in the inventories, such as milk, sugar, goods in process, and finished goods. The remaining items which were acquired, held, and used in comparatively small quantities were grouped and listed together under "Others." When this counting and listing had been completed, the 1942 opening inventory cost prices for such goods were applied and the cost of the said 1946 and 1947 closing inventories at 1942 opening inventory cost prices was determined. After this was done, the various items, their nature and number of quantity, and the various categories or classifications of goods making up the inventories were ignored, and in determining the goods in the said closing inventories which were to be treated as those included in the opening inventories, for the purpose of section 22(d), the entire inventories were treated as a single pool, classification, or category of goods consisting wholly and exclusively of dollars in one lump sum. It is argued that this method of applying section 22(d) to petitioner's 1946 and 1947 inventories is authorized and permitted under the statute and the regulations and is supported by the *Hutzler Brothers Co.* and *Basse* cases, and that the respondent's determination is in conflict therewith.

We are unable to see that the *Hutzler Brothers Co.* and *Basse* cases advance petitioner's case. Acquiescing in the decision in *Hutzler Brothers Co.*, respondent, by T.D. 5605, approved March 4, 1948, amended section 29.22(d)-1 of the regulations, by adding a paragraph "to adapt the retail inventory requirements of the regulations to the elective inventory principle of section 22(d) of the Internal Revenue Code as enunciated" by this Court in that case. In the meantime, the opinion in the *Basse* case had been reported, and by T.D. 5756, approved November 2, 1949, a further paragraph was added to section 29.22(d)-1 of the regulations to provide that "[i]f a taxpayer uses consistently the so-called 'dollar-value' method of pricing inventories, or any other method of computation established to the satisfaction of the Commissioner as reasonably adaptable to the purpose and intent of section 22(d), and if such taxpayer elects under section 22(d) to use the elective inventory method authorized by such section," the opening and closing inventories "shall be determined under section 22(d) by the use of the appropriate adaptation." In each instance the amendment was made applicable to all years beginning after December 31, 1938. In the instant case, the petitioner makes no claim that prior to 1942 it ever priced its inventories by the dollar-value method, whether by a single pool or mul-

tiple pools. And on the facts, it is patent, we think, that it did not. Even so, however, the respondent in his determination for the years herein has not rejected but has followed the dollar-value method of pricing petitioner's inventories. But in doing so, he did determine that petitioner's treatment of its raw materials, goods in process, and finished goods as one homogeneous pool for inventory purposes, rather than multiple pools according to the separate classifications as reflected by its records and by its operations, does not clearly reflect income, and is not the appropriate adaptation of that method for the purpose of determining petitioner's opening and closing inventories under section 22(d).

Neither *Hutzler Brothers Co.* nor *Basse* stands for or supports the proposition that on a change from the first-in, first-out method under section 22(c) for identifying goods which have been so intermingled that they cannot be identified with specific invoices, to the last-in, first-out method under section 22(d), the natural or established groupings or classifications according to which they have theretofore been inventoried may be ignored so as to treat all such groupings or classifications thereafter as one group or classification of homogeneous or fungible goods. Hutzler Brothers was a department store and had used consistently the retail method of pricing its inventories, and under that method the inventory of each department was required to be taken and priced separately from all other departments. And it was specifically provided by the regulations, see section 29.22(c)–8, that the factor or percentage to be applied to arrive at the cost of goods in a department must be determined solely with respect to the department the goods of which were being inventoried, and where there was more than one department, the application of a factor or percentage based upon an average for the entire business was not permissible. In changing to the last-in, first-out method under section 22(d), Hutzler Brothers neither made nor sought to make any change in its prior established practice of treating each department as representing a separate and distinct pool, group, or classification of goods, and approval of that practice was inherent in our opinion approving its continued use of the retail method of inventory. In the *Basse* case, the taxpayer priced his warehouse inventory by the so-called dollar-value method by the use of 27 pools or classifications which were shown by the facts to have been groupings according to customers' demands and as corresponding with the groupings in general use in the chain retail food store business. He did not seek to do otherwise. And while it does appear that the goods in the retail stores were not taken according to such classifications, the facts did show that except for the change from first-in, first-out to the last-in, first-out pricing of goods, his method of inventorying the merchandise in the stores was continued without change, and no question as to the

propriety of the classification by which the inventory of the retail stores had been taken was raised or decided.

Unlike Hutzler Brothers and Basse, who were retail merchants and merely bought and sold merchandise which had already been processed or manufactured, petitioner was a manufacturer or processor of raw materials and supplies into finished goods, and the regulations plainly show that raw materials, goods in process, and finished goods were and have long been established and accepted categories for inventory purposes. Under section 22(c), the regulations, section 29.22(c)-7, a manufacturer is permitted, in certain circumstances, to inventory its finished products on an allocated cost basis, provided the allocation is in conformity to a recognized trade practice and in the aggregate will absorb the total cost of production. But there is no such provision with respect to raw materials, and we have been unable to find any provision which has ever supplied any basis for inventorying raw materials as if they were finished goods, or for ignoring the natural and accepted classifications of the goods in question. It is to be noted also that beginning with the first regulations under section 22(d), a manufacturer seeking to change from the first-in, first-out method of pricing inventories under section 22(c) to the last-in, first-out method under 22(d) has always been required to submit with his application for change an analysis showing in detail the manner in which costs were computed with respect to raw materials, goods in process, and finished goods, and as to "the products (whether in process or finished goods)," segregating them into natural groups on the basis of similarity of raw materials used, similarity in factory processes through which they pass, or similarity in style, shape, or use of the finished products. And subsequently, when by T.D. 5407, approved October 9, 1944, the respondent expanded and amplified section 29.22(d)-1 of his regulations to cover in considerable detail the case of the manufacturer or processor who adopts the last-in, first-out method of inventory as to raw materials only, it was provided that raw material in the opening inventory must be compared with similar raw material in the closing inventory, and where there are several types of raw materials, the manufacturer is required to compare each type of raw material in the opening inventory with a similar type in the closing inventory. And when the finished product contains two or more different raw materials "as in the case of cotton and rayon mixtures," each raw material must be treated separately and adjustments made accordingly.[9] At

---

[9] Regulations 111.
SEC. 29.22(d)-1. INVENTORIES UNDER ELECTIVE METHOD.— * * *

    *         *         *         *         *         *         *

*Example* (2). * * *

    *         *         *         *         *         *         *

When used herein raw material in the opening inventory must be compared with similar raw material in the closing inventory. There may be several types of raw

no place in the regulations do we find any indication that for inventory purposes, whether under section 22(c) or section 22(d), and in order to reflect net income correctly, it has ever been permissible for a manufacturer to treat the various raw materials, its goods in process, and its finished goods as one fungible pool or category of goods. No reason has been advanced, and we can think of none, as to why in a case where the last-in, first-out method of inventory is to be used with respect to raw materials only, a raw material in the opening inventory must be compared with a similar raw material in the closing inventory, while at the same time, in a case where the last-in, first-out method is to be applied to goods in process and finished goods, as well as raw materials, it would be permissible and proper to treat not only all of the various raw materials as being fungible, but permissible to include them together with goods in process and finished goods in one single pool or classification of goods.

As supporting its claim of error in the respondent's determination, the petitioner relies on the opinion testimony of certain certified public accountants, to the effect that in petitioner's operation the use of one pool for its inventoriable goods for last-in, first-out inventory purposes represented sound accounting and correctly reflected petitioner's income. The premise appears to be that since petitioner's finished goods consist entirely of chocolate products, its business, for the purposes of section 22(d), is as if it were a single department of a department store, and, on brief, petitioner likens the respondent's use of separate pools or categories for its various raw materials, the goods in process, and finished goods to a division of the inventory of the shoe department of a department store into separate pools or categories for men's low brown shoes, men's low black shoes, men's high brown shoes, men's high black shoes, women's low-heeled brown shoes, women's low-heeled black shoes, and the like. The comparison is not to the point. As authorized by the regulations the retail method of pricing inventories whereunder the inventory is taken by departments and the merchandise in each department, as in a shoe department, is treated as a single pool or classification of goods is and always has been restricted in its use to

materials, depending upon the character, quality or price, and each type of raw material in the opening inventory must be compared with a similar type in the closing inventory.

In the cotton textile industry there may be different raw materials depending upon marked differences in length of staple, in color or grade of the cotton. But where different staple lengths or grades of cotton are being used at different times in the same mill to produce the same class of goods, such differences would not necessarily require the classification into different raw materials.

As to the pork packing industry a live hog is considered as being composed of various raw materials, different cuts of a hog varying markedly in price and use. Generally a hog is processed into approximately 10 primal cuts and several miscellaneous articles. However, due to similarity in price and use, these may be grouped into fewer classifications, each group being classed as one raw material.

When the finished product contains two or more different raw materials as in the case of cotton and rayon mixtures, each raw material is treated separately and adjustments made accordingly.

retail merchants and has not been accepted or approved as conforming "as nearly as may be to the best accounting practice" in a manufacturing business and "as most clearly reflecting the income." We are also of the view that the classification of retail merchandise consisting wholly of various colors, sizes, and types of shoes into one pool or category as shoes is in no way comparable to a classification of separate and distinct raw materials such as cocoa beans, sugar, and milk together and along with goods in process and finished goods as chocolate or candy. And we fail to find a likening of petitioner's manufacturing operations to that of the retail candy department of a department store any more persuasive.

It is safe to say, we think, that as a general rule, a manufacturing or processing operation requires particular and specific raw materials in rather definite quantities or ratios for the processing into given manufactured or finished articles, and the maintenance of an adequate supply or inventory of materials in each category would appear to be a prerequisite to a healthy operation, and certainly the facts show that that is true in the case of this petitioner. An inventory or method of inventory which disregarded or ignored these requirements, regardless of a comparable or constant amount in dollars, would not be a proper reflection of the operation and as opening and closing inventories would not, in our opinion, most clearly reflect income.

In that connection, it is not without significance, we think, that regardless of its election to change to the last-in, first-out method of inventory, petitioner in the course of its operations has regularly taken and maintained as a part of its records a monthly inventory of its goods, with separate categories or classifications for its various raw materials, one for goods in process and another for finished goods, and only in the case of its December 31 inventories does it appear that it has ever thereafter translated any monthly inventory into a one-pool inventory expressed in dollars only.[10]

Actually, it is for the most part a matter of volition on the part of a taxpayer whether his closing inventory for the purposes of section 22(d) is, or is not, maintained at a level constant with his opening inventory for his base year, through the purchase at or prior to the inventory date of goods sufficient to replace the goods which have been consumed and to bring his inventory back up to the appropriate level, whether the inventory be taken according to separate pools or a single pool. It is, of course, true that certain events or circumstances could and sometimes do arise so as to prevent such replacement of goods which have been consumed in the course of operations. And Con-

---

[10] We do not of course mean to imply that since the amendment of section 22(d)(1)(B) and section 22(d)(5)(B) of the Revenue Act of 1939 by section 118 of the Revenue Act of 1942, that the use of a method of inventory other than the last-in, first-out for periods of less than the entire taxable year is of itself a proper basis for denying the right to use that method.

gress, recognizing that fact, has added subsection (6) to section 22(d), to provide that where the failure of a taxpayer to replenish his inventory in the manner indicated is beyond his control because of certain specified conditions, such goods, when later acquired in replacement of the goods consumed, shall be included in the taxpayer's inventory for the year of replacement at the inventory cost basis of the goods replaced. Whether or not this should be done, and the extent to which it was to be authorized, was obviously regarded by Congress as a matter of legislation and not of accounting principles or legal construction. The qualifying conditions specified are where the failure or inability to replenish the inventory is due to enemy capture or control of sources of limited foreign supply, to shipping or other transportation shortages, to material shortages resulting from priorities or allocations, to labor shortages, or to prevailing war conditions beyond the control of the taxpayer. There is no claim on the part of the petitioner, and we find no facts to indicate, that its failure to maintain its various raw materials, goods in process, and finished goods at an appropriate level with its opening inventory of such items for its base year was due to any of the conditions or circumstances specified by Congress. Furthermore, we find no provision, or suggestion of provision, in either the statute or the regulations to permit, by indirection, the accomplishment of the results sought through the use of a single-pool inventory and the replacement of one type or category of goods at the inventory cost of the goods which have been consumed through the purchase of a different type or category of goods which in fact was not depleted, particularly where, insofar as shown, the failure to maintain the various categories of goods at the desired level is the result "of a financial or business disinclination on the part of the taxpayer to do so."

According to section 22(d)(3), the change to and use of the last-in, first-out method of inventory must be in accordance with the regulations prescribed by the Commissioner as being necessary in order that the use of such method may clearly reflect income. Petitioner, by the terms and as a part of its application to make that change, not only agreed to "such adjustments incident to the change to the elective method, or the use of such method," but "to any later change from such method, in the inventories of prior taxable years or otherwise, as the Commissioner * * * upon the examination" of its returns for the years involved might deem necessary in order that the true income of the petitioner would be clearly reflected. Not only have we been unable to find in the statute or regulations any authorization for the ignoring by a manufacturer of the natural and normal categories or classifications of the raw materials, goods in process, and finished goods in its inventory, but, as indicated, the regulations in all respects appear to contemplate the continued use of the same cate-

gories after change to the last-in, first-out inventory method under section 22(d), as before. We are convinced that as compared with the use of one pool for all of its raw materials, goods in process, and finished goods, the respondent's use of separate pools for the various raw materials, goods in process, and finished goods most clearly reflects income, and that it was within the scope of his duties and powers so to determine.

We have carefully considered the testimony of the certified public accountants called by the petitioner to give opinion testimony as to accounting principles. We have also noted their conclusions that the use of one pool for petitioner's goods for inventory purposes under section 22(d) clearly reflects income. It might be that a consistent and continued use of one pool would over a long period of years result in a reasonably fair reflection of income, dependent, of course, upon whether or not a taxpayer used the greater latitude for a manipulation of income back and forth between years. Similar reasoning was advanced in support of the use of a constant price for inventory items under section 22(c). It is, of course, true that through the enactment of section 22(d), Congress did relax the ban on the constant-price method of inventory to some degree,[11] namely, to the extent of permitting a taxpayer to treat the goods on hand at the close of a taxable year as those included in the opening inventory to the extent thereof, which, as we have pointed out, permits a taxpayer the continued use of the cost prices for its opening inventory of its base year up to the extent that a corresponding amount of properly comparable goods or items is maintained in each succeeding closing inventory. But even under the constant-price method substantial regard for the identity of the goods so priced was essential. As already stated, we are convinced that the use of separate pools or categories for the various raw materials, for goods in process, and for finished goods will most clearly reflect petitioner's income from year to year, as the respondent has determined, and we have found nothing in the statute or the regulations which either convinces or persuades us that Congress had any intention under section 22(d) of extending the scope of the constant-price method of inventory nearly as far as the lump-sum effect of a single pool or category in cases such as this would do.

There is no showing of record that the petitioner, with its application to change its method of inventory from that of first-in, first-out under section 22(c) to last-in, first-out under section 22(d), filed the required analysis of its 1942 opening and closing inventories or, as a manufacturer, disclosed in detail the manner in which costs were computed with respect to raw materials, goods in process, and finished goods, as were specifically required by the regulations to be included

---

[11] See *Hutzler Brothers Co.*, 8 **T.C.** 14, **29.**

therein. And it is not possible, from the application or the 1942 return as filed, to say that the 1942 closing inventory was or was not priced by the dollar-value method and, if so, by one pool or multiple pools. It is the claim of the petitioner, however, that beginning with 1942, the year of its election, and for all years thereafter, it has taken its inventory by the dollar-value method and on a single-pool basis, as in the taxable years 1946 and 1947; that the respondent through his agent examined and approved the returns as filed for the years 1942, 1943, 1944, and 1945; that consistency is to be given greater weight than any particular method of taking inventories or a basis of valuation; and the respondent, having approved the method used for the years stated, may not now reverse such approval. In support thereof, it cites and relies on *Maloney* v. *Hammond*, 176 F. 2d 780, *Geometric Stamping Co.*, 26 T.C. 301, and certain unreported decisions of this Court.

As a factual basis for this contention, the petitioner refers to and relies on the testimony of the representative of the accounting firm which makes the annual audit of its books and prepares its returns, to the effect that beginning with 1942, petitioner, in applying section 22(d), has used a single-pool method for determining goods in its closing inventory which are to be treated as having been included in its opening inventory, and to the further fact that such method of taking inventory was called to the attention of the revenue agent and as to the inventories, the returns were approved as filed. In one respect, the testimony of the witness is corroborated of record, and that is, that as to the years 1942, 1943, and 1944, the respondent in his determination made no changes with respect to inventory as reported by petitioner on its returns. Beyond that point, however, the facts appear to refute, rather than corroborate, the testimony of the witness.

Petitioner's closing inventory for 1942, the first year in which the elective or last-in, first-out method of inventory under section 22(d) was used, as shown by its 1942 return and used in arriving at the cost of goods sold, was $690,961.46, whereas the 1942 opening inventory was $736,117.88. As we understand the single-pool method of applying and using the last-in, first-out method of taking inventory, as contended for by petitioner, petitioner's closing inventory for any later year at 1942 opening inventory prices could never be below $690,691.46, so long as in every succeeding year there was in fact an increase in its closing inventory when priced at 1942 opening inventory prices. According to petitioner's 1946 return and other evidence of record, and according to petitioner's factual representations on brief, the amount of petitioner's 1946 opening inventory, or otherwise stated, its 1945 closing inventory, which was to be

treated as the inventory to be priced at 1942 opening inventory prices, was only $633,368.20, and that was true even though for each of the years 1943, 1944, and 1945 petitioner had had increases in its inventory over and above the goods which were to be treated as having been on hand in the opening inventory. We know of no way in which under the single-pool method contended for the amount of petitioner's 1945 closing inventory at 1942 opening inventory prices could drop from $690,691.46 to $633,368.20, if in each and every intervening year petitioner had in its closing inventory goods which when priced at 1942 prices exceeded the opening inventory for the year. Accordingly, no proper basis appears for the claim that the respondent has approved prior year inventories which were taken on a one-pool basis. *Maloney* v. *Hammond, supra,* and *Geometric Stamping Co., supra,* are not in point and, on this record, at least, do not stand in the way of respondent's determination for the years herein.

It also follows that the petitioner's position that respondent has been inconsistent in his determinations that the 1946 closing inventory must be priced according to multiple pools, while allowing the opening inventory priced by a single pool to stand, is not well taken, since it is not possible, on the record here, to conclude that petitioner's closing inventories for any of its prior years were priced on a single-pool basis.

There is, we think, some merit in petitioner's contention that cocoa butter represented a part of goods in process, rather than a separate category or pool. It is true, as respondent points out, that petitioner did make some sales and some purchases of cocoa butter, as such. But the record further shows that these purchases and sales were comparatively insignificant and that cocoa butter was produced primarily and almost wholly in the course of processing the cocoa beans along with the other products into finished chocolate goods. Cocoa butter was predominantly a part of the goods in process, and in our opinion should be so classified.

The petitioner makes a comparable argument against the division of cocoa beans as between basic beans and flavor beans, and of the finished goods into chocolate coating, cocoa, and confections. It could be that it would be adequate to classify or pool basic beans and flavor beans as one pool or category, and chocolate coating, cocoa, and confections into one pool as finished goods. The respondent has determined otherwise, however, and on the proof of record, which must supply the basis for a contrary conclusion, we are not persuaded that his determination in that respect is erroneous.

*Decision will be entered under Rule 50.*