WENDLE FORD SALES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7614–76.     Filed June 7, 1979.

*Gary C. Randall* and *Keith D. Rieckers*, for the petitioner.
*Kenneth McWade*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $2,939 in petitioner's Federal income tax for 1973.

Concessions having been made, the issue for decision pertains to petitioner's method of valuing its inventory. Specifically, we must decide whether petitioner, an automobile dealer who has properly elected the LIFO method of inventory valuation, must add to the cost of its "base-year" units an additional charge for catalytic converters and electronic (solid-state) ignition systems which were not present on base-year models.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner is a Washington corporation which maintained its principal place of business in Spokane, Wash., when the petition herein was filed.

At all times relevant herein, petitioner was engaged in the retail sale of new and used automobiles and trucks. Prior to 1974, petitioner used the FIFO, or "first-in, first-out" method of valuing its inventories. On its Federal income tax return for its calendar year ending December 31, 1974, petitioner properly elected to change its inventory valuation with respect to its new car and new truck inventory from FIFO to LIFO, or "last-in, first-out." All proper adjustments were made to petitioner's beginning inventory to reflect the LIFO election.

In electing the LIFO method of valuing its inventory, petitioner employed the "dollar-value" and "double-extension" method as authorized by sec. 1.472–8(e), Income Tax Regs. Under the double-extension method, items of inventory are

placed into pools by types or classes of goods. In this connection, petitioner properly adopted one pool for its inventory of new cars and trucks, subdivided into five categories for new cars and four categories for new trucks. The car categories were "Luxury," "Fords," "Intermediates," "Compacts," and "Subcompacts." Truck categories were "Heavy," "Medium," "Light," and "Compact."

The double-extension method also requires the determination of a "base-year unit cost" for each item in the inventory pool. The "base-year unit cost" is the cost of the item determined as of the beginning of the taxable year for which the LIFO method is first adopted, i.e., the base date. Petitioner's base date is January 1, 1974, and as its base-year unit cost, petitioner used the average invoice cost to it from Ford Motor Co.

Petitioner's base-year inventory pool for LIFO purposes was comprised of 1974 Ford vehicles. Some, but not all, of these 1974 models were equipped with solid-state ignition. Beginning with the 1975 models, solid-state ignition became standard equipment on all Ford automobiles, including those in petitioner's yearend inventory of December 31, 1974. Catalytic converters were not found on any 1974 Ford vehicles, but were found on some 1975 model Fords. The following schedule shows the presence and absence of converters and solid-state ignition systems on 1974 and 1975 model automobiles.

| Category and engine size | 1974 Models | | 1975 Models | |
|---|---|---|---|---|
| | Solid-state | Converter | Solid-state | Converter |
| LUXURY | | | | |
| Thunderbird | Yes | No | Yes | Yes |
| FORDS | | | | |
| LTD—4-door hardtop | | | | |
| 351 engine (standard) | No | No | Yes | Yes |
| 400 engine | Yes | No | Yes | Yes |
| INTERMEDIATES | | | | |
| Gran Torino—4-door | | | | |
| 351 engine | No | No | Yes | Yes |
| 400 engine | Yes | No | Yes | Yes |
| Gran Torino—2-door Elite | | | | |
| 351 engine (standard) | No | No | Yes | Yes |
| 400 engine | Yes | No | Yes | Yes |
| Granada—2-door sedan | | | | |
| 250 engine | n/a | n/a | Yes | No |
| Granada—4-door sedan | | | | |
| 250 engine | n/a | n/a | Yes | Yes |
| 302 engine | n/a | n/a | Yes | Yes |

| Category and engine size | 1974 Models | | 1975 Models | |
|---|---|---|---|---|
| | Solid-state | Converter | Solid-state | Converter |
| 351 engine | n/a | n/a | Yes | No |
| COMPACTS | | | | |
| Mustang II hardtop | | | | |
| 2300 engine (2.3 liter) (standard) | No | No | Yes | No |
| 2800 engine (2.8 liter) | No | No | Yes | Yes |
| Maverick—4-door sedan | | | | |
| 250 engine | No | No | Yes | No |
| SUB-COMPACTS | | | | |
| Pinto—3-door Runabout | | | | |
| 2300 engine | No | No | Yes | No |
| Pinto—3-door Runabout with 2800 engine | n/a | n/a | Yes | Yes |

Introduction of the solid-state ignition and catalytic converter systems represented the auto industry's response to achieve the emission standards established by the Government for 1975 model vehicles.[1] The catalytic converter is a stainless steel can containing a ceramic steel grid coated with platinum alloy. The converter is designed to change hydrocarbon and carbon monoxide emissions into harmless carbon dioxide and water. The solid-state ignition system features a distributor, coil, and module which combine to reduce hydrocarbon emissions by improving starting performance. The solid-state system replaced the conventional ignition system which included breaker points and a condenser. Neither the converter nor the solid-state ignition appreciably affected the operating performance, efficiency, or value of the 1975 model vehicle when compared with the 1974 model vehicle.

Whether or not a particular model Ford would be equipped with a catalytic converter or solid-state ignition system was outside the control of a dealer. Moreover, the dealers had no way of knowing what, if anything, is added to their vehicle cost for converters or solid-state ignition systems.[2]

The price increase for 1975 model Fords over 1974 model Fords did not directly reflect the addition of the pollution control devices. Rather, pricing in the auto industry is based upon a number of factors which primarily take into account competitive

---

[1] In some instances it is possible, through engineering, to achieve pollution control standards without either the catalytic converter or the solid-state ignition system.

[2] It is even doubtful Ford Motor Co. could have isolated the particular additional cost, if any, of pollution control devices on the 1975 model vehicles.

considerations. In this regard, model prices often change during a given year for the same vehicles.

In issuing his statutory notice of deficiency, the respondent determined that petitioner's ending inventory for 1974, which consisted principally of 1975 model automobiles and trucks by December 31, 1974, was equipped with catalytic converters and electronic ignitions, which were not reflected in the base-year cost for LIFO inventory purposes previously computed by the petitioner. The adjustment to petitioner's December 31, 1974, LIFO inventory computation was based upon the inclusion of such catalytic converters and electronic ignitions, as follows:

| | | | |
|---|---|---|---|
| 98 Catalytic converters at $80 per unit | = | $7,840 |
| 189 Electronic ignitions at $50 per unit | = | 9,450 |
| Total increase in inventory | | 17,290 |

The per-unit price for the converters and electronic ignitions as determined by the respondent represented the average cost per unit to the petitioner's parts department for such units as of December 31, 1974.

The cost of building a vehicle out of parts from a dealer's parts department—exclusive of labor—is approximately $25,000 or 4 to 5 times that of the dealer cost including labor costs for the same vehicle from the factory.

By virtue of the addition to petitioner's 1974 ending inventory by respondent's determination, petitioner's operating loss was reduced by $17,290 for carryback purposes to 1973, the year in issue.

## OPINION

For its taxable year ending December 31, 1974, petitioner, an automobile dealer, properly elected to change its method of valuing its inventory of new automobiles and new trucks from the first-in, first-out method (FIFO) to the last-in, first-out method (LIFO). Specifically, petitioner elected to use the "dollar-value" LIFO method as authorized by sec. 1.472–8(a), Income Tax Regs.

Under the LIFO inventory method, it is assumed for a given year that the most recent purchases were the first sold and that the goods on hand at the end of the year are considered to be the earliest acquired. *Klein Chocolate Co. v. Commissioner*, 32 T.C. 437, 450 (1959). Stated another way, under the LIFO method, a

taxpayer is permitted to treat the goods in its ending inventory as being: (1) Those included in its inventory at the beginning of the year to the extent thereof and (2) those acquired during the year. Sec. 1.472–1(a), Income Tax Regs. In computing LIFO inventory values, two basic approaches are used—the "specific-goods" method and the "dollar-value" method.[3]

Under the specific-goods method, the physical quantity of homogeneous items of inventory at the end of the taxable year is compared with the quantity of like items in the beginning inventory to determine whether there has been an increase or decrease during the year. *Hutzler Brothers Co. v. Commissioner*, 8 T.C. 14 (1947); *Basse v. Commissioner*, 10 T.C. 328 (1948). Because the specific-goods method requires the matching of physical units, practically speaking, it is only used as a method for valuing inventories in those industries with inventories which contain a limited number of items with quantities that are easily measured in units. In contrast to the specific-goods method, the dollar-value method measures increases or decreases in inventory quantities, not in terms of physical units, but in terms of total dollars. Thus, to determine whether there has been an increase or decrease in the inventory during the year, the ending inventory is valued in terms of total dollars that are equivalent in value to the dollars used to value the beginning inventory. *Hutzler Brothers Co. v. Commissioner, supra; Basse v. Commissioner, supra; F. S. Harmon Manufacturing Co. v. Commissioner*, 34 T.C. 316 (1960). Because it is not predicated upon the matching of specific items, use of the dollar-value method permits the application of the LIFO principle in those industries with complex inventories containing a vast number of items. The regulations permit any taxpayer to elect the dollar-value LIFO method "provided such method is used consistently and clearly reflects the income of the taxpayer." Sec. 1.472–8(a), Income Tax Regs. Respondent does not challenge petitioner's right to determine the cost of its LIFO inventory under the dollar-value method.

Central to the operation of the dollar-value method is the

---

[3]R. Hoffman & H. Gunders, Inventories: Control, Costing, and Effect upon Income and Taxes 275 et seq. (2d ed. 1970).

grouping of the goods contained in the inventory into a pool or pools.[4] Depending upon whether the business enterprise is engaged in the manufacturing or the retailing of merchandise, the regulations contain various guidelines with respect to the number and composition of the pools used. In the case of a retailer, such as petitioner, the regulations provide that the inventory is to be grouped by major lines or types of goods. Sec. 1.472–8(c), Income Tax Regs. For purposes of this case, the parties have stipulated that petitioner properly adopted a single pool for its inventory of new cars consisting of five categories— "Luxury," "Fords," "Intermediates," "Compacts," and "Subcompacts"—and new trucks consisting of four categories—"Heavy," "Medium," "Light," and "Compact."

The regulations contain four different methods of computing LIFO values for dollar-value pools. In this connection, petitioner properly employed the "double-extension" method as provided in sec. 1.472–8(e)(2), Income Tax Regs.[5] Under the double-extension method, the benchmark used to compute the cost of the ending inventory in a pool is the "base-year cost" of each item in the pool. The "base-year cost" of an item is generally the cost of the item determined as of the beginning of the taxable year for which the LIFO method is first adopted,[6] i.e., the base year, and, in the case of an item entering a pool for the first time in a year subsequent to the base year, the current cost of that item.[7] In accordance with the double-extension method, the base-year cost of each item within a pool is aggregated, and compared with the beginning inventory of the pool valued at base-year cost. If the value of the ending inventory at base-year cost does not exceed the beginning inventory using base-year cost, the closing inventory is equal to the inventory on hand at yearend, valued at base-year cost. If, however, the ending inventory, valued at base-year cost, exceeds the value of the beginning inventory at base-year cost, the ending inventory is equal to the sum of the base-year cost of the beginning inventory plus a "layer of increment" valued at current-year cost computed under a

---

[4]Sec. 1.472–8(a), Income Tax Regs. See S. Gertzman, "LIFO: Current Problems and Needed Changes," 34th Ann. N.Y.U. Tax Inst. 235, 270 et seq. (1976).

[5]The other methods authorized by the regulations are the "index" method, the "link-chain" method, and the "retail" method. A taxpayer may ordinarily use only the double-extension method. Sec. 1.472–8(e)(1), Income Tax Regs. See n. 3 *supra.*

[6]Sec. 1.472–8(a), Income Tax Regs.

[7]Sec. 1.472–8(e)(2)(iii), Income Tax Regs.

formula set forth in the regulations. *Hutzler Brothers Co. v. Commissioner, supra;* sec. 1.472–8(e)(2)(iv), Income Tax Regs.

As previously mentioned, the base-year cost of a pool is an aggregate of the base-year cost of each item of inventory in the pool. In the case of an "item" of inventory entering a pool for the first time subsequent to the first taxable year for which LIFO was adopted, the double-extension method requires that the base-year cost of the pool be adjusted to reflect the introduction of the new item into the pool. Specifically, sec. 1.472–8(e)(2)(iii), Income Tax Regs., in part, provides:

> Under the double-extension method a base-year unit cost must be ascertained for each *item entering a pool for the first time* subsequent to the beginning of the base year. In such a case, the base-year unit cost of the entering item shall be the current-year cost of that item unless the taxpayer is able to reconstruct or otherwise establish a different cost. * * * [Emphasis added.]

The point of dispute between the parties in this case is as to the meaning of the term "item" in this regulation.

For its taxable year ending December 31, 1974, petitioner properly elected to change its inventory valuation with respect to its new cars and new trucks from FIFO to LIFO. In making this election, petitioner's inventory pool for LIFO purposes was comprised of 1974 Ford vehicles which were contained in its ending inventory for 1973.[8] Some, but not all, of these 1974 models were equipped with solid-state ignition. Beginning with the 1975 models, solid-state ignition became standard equipment on all Ford automobiles, including those in petitioner's yearend inventory of December 31, 1974. Catalytic converters were not found on any 1974 Ford vehicles, but were found on some 1975 model Fords. At issue is whether the catalytic converters and solid-state ignition systems added between 1973 and 1974 represent "items" of inventory which were not present in the base-year inventory pool thereby requiring an adjustment to the base-year cost of such pool in accordance with sec. 1.472–8(e)(2)(iii), Income Tax Regs.

Respondent's position is that the basic inventory pool used by petitioner in valuing its inventory under the LIFO method was different between the taxable years 1973 and 1974. He argues

---

[8]At this juncture, it should be noted that while the taxable years in issue are 1973 and 1974, the inventory models being valued are 1974 and 1975 model automobiles and trucks which were in inventory as of the yearend 1973 and 1974

that catalytic converters and solid-state ignition systems represent new "items" of inventory within the meaning of sec. 1.472–8(e)(2)(iii), Income Tax Regs., which were not present in petitioner's base-year inventory, and thus, an adjustment to the base-year cost of petitioner's inventory is required. He asserts that a failure to make an adjustment would have the effect of understating closing inventories, and overstating the cost of goods sold. As a result, petitioner's income would be understated, and hence, not clearly reflected.

Petitioner's position is that "item" in sec. 1.472–8(e)(2)(iii), Income Tax Regs., in the context of this case, refers to a vehicle, an automobile or truck, and not to its individual components. Thus, the real issue is whether a 1974 model Ford is the same "item" as a 1975 model Ford. Stated otherwise, does the addition of a catalytic converter and a solid-state ignition system render the 1975 Ford a different "item" from the 1974 model Ford? Petitioner argues that the 1975 Ford is not a different item within the intendment of the regulations, and therefore no adjustment to the base-year cost of petitioner's inventory pool need be made. To accept respondent's position, argues petitioner, would require a yearly analysis of the individual parts of a vehicle to determine what adjustments must be made for LIFO purposes, and such a requirement would defeat the purpose for the use of dollar-value approach in the first place.

As a preliminary matter, we agree with petitioner that the term "item" in sec. 1.472–8(e)(2)(iii), Income Tax Regs., in the case of a retailer of goods, refers to a finished product of inventory and not, as respondent apparently believes, to its individual components or parts. Although "item" is not specifically defined, support for our construction of the term may be gleaned from the context of its use. First, sec. 1.472–8(e)(2)(iii), Income Tax Regs., refers to an item entering a dollar-value LIFO inventory pool for the first time. Second, sec. 1.472–8(c), Income Tax Regs., in detailing the rules governing the composition of an inventory pool, states in part: "Items of inventory in the hands of wholesalers, retailers, jobbers, and distributors shall be placed into pools by major lines, types, or classes of goods."

In requiring that "items of inventory" be categorized into pools by "major lines, types, or classes of goods," it is clear that the term "item" when dealing with a retailer refers to a finished

product. That being so, sec. 1.472–8(e)(2)(iii), Income Tax Regs., in making reference to an "item entering a pool for the first time" means, in the case of retailer, a finished product held for sale for the first time. Of course, what constitutes a finished product will vary depending upon the facts of a particular situation. In the present case, the finished product within petitioner's dollar-value inventory pool is a new automobile or a new truck. In view of this, it is obvious that the catalytic converter and the solid-state ignition are not, by themselves, new "items" entering petitioner's inventory pool for the first time.[9]

Thus, the issue, as properly framed by petitioner, is whether the addition of a catalytic converter and a solid-state ignition system renders the 1975 Ford vehicle a different "item" from the 1974 Ford vehicle. In more general terms, we must decide whether minor modifications in the composition of a product by a manufacturer require the retailer of that product to make yearly adjustments to the base-year cost of its dollar-value inventory. We conclude that in such a case an adjustment to the base-year cost is not appropriate. To hold otherwise would not only ignore the fundamental purpose underlying the development of the dollar-value method, but would also create serious practical impediments to its application such that its continued usefulness in most situations would be greatly diminished or eliminated.

In its simplest terms, accounting for inventories is merely tracing the flow of inventoriable costs. Its goal is to use the cost-flow assumption, such as FIFO and LIFO, which, under the circumstances, will most clearly reflect income by matching the appropriate costs against revenues. Because cost-flow assumptions used to measure inventory are concerned with the flow of costs rather than the physical flow of goods, the identity of which goods were sold and which remain in inventory is not of any particular importance.[10]

The last-in, first-out method of valuing inventories was first permitted by section 22(d) of the Revenue Act of 1938. At the

---

[9]Were the issue concerned with an inventory of automobile parts, the addition to such inventory of catalytic converters and solid-state ignition systems would constitute new "items" entering the pool for the first time within the meaning of sec. 1.472–8(e)(2)(iii), Income Tax Regs. See also K. Humer, W. Galliher & G. Stewart, 69–3d Tax Management, LIFO: Fundamentals, Pooling and Computations, A–13 (1975).

[10]W. Meigs, A. Mosich & C. Johnson, Intermediate Accounting 301, 308 (4th ed. 1978).

time of its enactment, this section limited the application of the LIFO method to the leather tanning and nonferrous metal industries. Subsequently, in 1939 Congress amended section 22(d) and extended the right to elect LIFO to all taxpayers.[11]

Although the LIFO method was available to any taxpayer, the Commissioner adopted regulations in 1939 restricting its use to the specific-goods approach thereby effectively limiting its application to those industries whose inventories consisted of a few products that could be easily measured in terms of units, such as pounds, feet, yards, etc. Sec. 19.22(d), Regs. 103. Despite the restrictive scope of the regulations, in the early 1940's several industries with widely diverse and complex inventories, particularly department stores, were interested in applying the LIFO principle to value their inventories. As a means of doing so, without having to comply with the burdensome requirements of the specific-goods approach, these industries developed and adopted the dollar-value method.[12]

At the time of its introduction, the Commissioner opposed the use of the dollar-value method. His position was that, in order to clearly reflect income, LIFO required the matching of similar goods in beginning and ending inventories. The Commissioner's resistance eventually culminated in the first case to squarely address the question of the propriety of the use of the dollar-value method.

In *Hutzler Brothers Co. v. Commissioner*, 8 T.C. 14 (1947), the taxpayer was a department store with an inventory comprised of a vast number of items estimated in the hundreds of thousands. For its fiscal year 1942, it adopted the dollar-value LIFO method for valuing its inventories. In contending that the taxpayer was not entitled to use the dollar-value method, the Commissioner argued that a prerequisite to the use of the LIFO method was the matching of specific articles of goods on hand at the end of the year with similar articles of goods on hand at the beginning of the year. After concluding that the dollar-value method measured inventories consistent with LIFO principles, we rejected the Commissioner's position and specifically upheld the use of the dollar-value method even though the goods in the

---

[11]K. Humer, W. Galliher & G. Stewart, 69–3d Tax Management, LIFO: Fundamentals, Pooling and Computations, A–28 (1975).

[12]R. Barker, "Practical Aspects of Inventory Problems Under Current Conditions: Lifo, Involuntary Liquidations," 10th Ann. N.Y.U. Tax Inst. 511, 517 (1952).

closing inventory "may and generally do, differ considerably as to type, quality, and price" from those goods in the beginning inventory. (8 T.C. at 25.)

Shortly thereafter, in *Basse v. Commissioner*, 10 T.C. 328 (1948), we reaffirmed our decision in *Hutzler* and again upheld the use of the dollar-value method as a permissible means of determining LIFO inventories. In so doing, we restated our holding in *Hutzler* as follows:

> We there held that under the lifo method a physical matching of goods on hand in a given department at the end of the year with goods on hand in that department at the beginning of the year was not required and that a matching of dollar values of a department at the beginning and end of the year was sufficient to constitute compliance with the matching requirements of the statute. That holding was reached although admittedly the goods on hand at the beginning and end of the year generally differed considerably as to type, quality, and price. [10 T.C. at 338.]

Subsequently, in 1949 the Commissioner amended his regulations to permit the use of the dollar-value method by any taxpayer.

Under the dollar-value LIFO method, the quantity of goods contained in beginning and ending inventories is expressed, not in physical units, but rather in terms of their lowest common denominator—dollars. Because it measures quantities in terms of equivalent dollars rather than in terms of physical units, dollar-value LIFO affords the only practicable way of applying the last-in, first-out principle to inventories containing a wide variety of items. By eliminating the need to match specific goods in opening and closing inventories, and focusing instead on the total dollars invested in inventory, dollar-value LIFO necessarily ignores minor changes in the design of a product from year to year.[13] This freedom from having to take into account minor technological changes in a product represents a major objective of the dollar-value approach. For example, a typical retailer of household appliances such as washers, dryers, televisions, etc., or a wholesaler of clothing who stocks dresses, shirts, coats, shoes, etc., will purchase its wares from a number of different manufacturers. For competitive considerations or otherwise, it would not be uncommon for many of the manufacturers of these products to be continually altering their basic product in an

[13] See R. Barker, *supra* at 517–518.

attempt to improve its quality or modernize its style. These modifications could be relatively minor in scope, or, on the other hand, the alterations (either viewed individually or taken collectively) could be so significant and substantial as to change completely the basic product. When the latter transformation occurs it would not be inappropriate to require the retailer or wholesaler to account for the redesigned product as a new "item" of inventory with a consequential adjustment to the base-year cost of its inventory pool. Where, however, the modifications in a product are relatively minor in nature, it would be unreasonable to have, and, in most instances, virtually impossible to comply with, a requirement that the retailer or wholesaler *annually* adjust its base-year cost to reflect these modifications.[14] Indeed, this attention to detail is precisely the type of accounting for inventories that the dollar-value method was designed to eliminate. *Hutzler Brothers Co. v. Commissioner, supra; Basse v. Commissioner, supra; Klein Chocolate Co. v. Commissioner*, 32 T.C. 437, 450 (1959). Of course, the point at which a modification or modifications in a product are considered so substantial as to render it a new item for LIFO inventory purposes must, of necessity, be decided on a case-by-case basis from an examination of all the relevant facts. In the present case, however, it is clear that the addition of the catalytic converter and the solid-state ignition system were not so significant as to make the 1975 Ford vehicle an item different from the 1974 Ford vehicle. The catalytic converter was added to achieve the emission standards set by the Government for 1975 model vehicles. It is basically a stainless steel can containing a ceramic steel grid coated with a platinum alloy. The converter is designed to change hydrocarbon and carbon monoxide emissions into harmless carbon dioxide and water. The solid-state ignition which consists of a distributor, coil, and module, was also added to reduce hydrocarbon emissions by improving the starting performance of a vehicle. The solid-state system replaced the conventional system of breaker points and condenser. Apart from the reduction in emissions, neither the addition of the

---

[14]For instance, the number of parts on an appliance such as a television may total into the hundreds. If the manufacturer changes five of those parts without altering the basic product, it would not be feasible for the retailer or wholesaler to account for such changes. More than likely, if the basic product was essentially unaltered, it is doubtful the retailer or wholesaler would even have knowledge of the specific changes that were made. See E. Blakely & H. Thompson, "Technological Change and Its Effects on Dollar-Value LIFO," 51 Management Accounting 33 (Aug. 1969).

catalytic converter nor the solid-state ignition had any appreciable effect on the 1975 model vehicle's performance, value, or otherwise, when compared with the 1974 model vehicle. Moreover, the cost of a converter and a solid-state ignition together represent only an insignificant percentage of the total cost of the parts of an unassembled automobile. In short, the 1975 Ford vehicle, in all meaningful respects, was the same item as the 1974 Ford vehicle. In light of this, we conclude that no new "item" entered petitioner's inventory pool for the first time within the meaning of sec. 1.472–8(e)(2)(iii), Income Tax Regs., and, thus, no adjustment need be made to petitioner's base-year costs to reflect the addition of the converter and solid-state ignition.[15]

Respondent argues that a failure to account for these modifications belies the evolutionary change of the automobile or truck over a period of time. He asserts, for example, that changes and improvements in the basic vehicle over the years have made a 1976 Ford vehicle a different item of inventory than a 1932 Ford vehicle. As it relates to the present case, he foresees the same evolutionary process occurring in the 1974 Ford vehicle vis-a-vis a Ford vehicle of the year 1990. By failing to account for yearly modifications in the vehicle, the base-year cost of the inventory will be held at an artificially low level with a corresponding overstatement of petitioner's cost of goods sold and an understatement of gross income. In response to this, petitioner contends that because the dollar-value LIFO method does not require a matching of particular goods, continuing model and style changes made over the years need not be taken into account. Thus, while the 1976 model vehicle is totally different in style and operation from the 1932 model vehicle, it is, nevertheless, the same basic item—a car. Put simply, petitioner submits that "a car is a car is a car." We cannot completely agree with the contention of either party.

With respect to respondent's argument, we agree that a Ford vehicle of the 1970's is a different item than a comparable Ford vehicle assembled in the 1930's. However, for purposes of this

---

[15]Respondent determined the cost of the catalytic converter and solid-state ignition, and hence the amount of the adjustment to the base-year cost, on the basis of the average cost per unit to the petitioner's parts department for such units as of Dec. 31, 1974. As an alternative to its contention that no adjustment need be made to its base-year costs, petitioner specifically challenges respondent's use of the cost of the parts to its parts department as the proper measurement of the adjustment. Because of our holding herein, we need not decide this issue.

case, we are not making such a comparison; rather, we are comparing the 1975 Ford vehicle with the 1974 model, and in doing so, as we have concluded above, we do not think the differences in the two models are substantially sufficient to warrant the conclusion that the two vehicles are different items for dollar-value LIFO purposes. On the other hand, we do not agree with petitioner's position that "a car is a car" regardless of the model and style changes that are made. As respondent correctly observes, over a period of time, an automobile or truck may undergo a number of modifications which collectively make that vehicle a different item from the vehicle in existence in the base year. For example, petitioner's base-year inventory pool was comprised of 1974 Ford vehicles. Between the model year 1974 and, for instance, the model year 1984, a number of changes may be made to the basic Ford vehicle which together justify the conclusion that the 1984 model vehicle is a different item entering petitioner's inventory pool for the first time. If that be the case, an adjustment to petitioner's base-year cost will be appropriate. In any event, as explained above, the determination of when various changes and improvements in a product are sufficiently substantial to render it a new item for dollar-value inventory purposes can only be made by examining the facts of each case. Here, as between the 1975 model vehicle and the 1974 model, the threshold point had not been crossed.[16]

Due to concessions,

*Decision will be entered under Rule 155.*

---

[16]As a means of avoiding the difficulty of deciding at what point various minor modifications in a product collectively are sufficiently great to make it a new item for dollar-value inventory purposes, it has been suggested that a periodic adjustment to the base-year unit cost be made as a matter of course after the lapse of 5, 8, or 10 years depending on the circumstances. R. Hoffman & H. Gunders, *supra* at 293 (see n. 3). See also E. Blakely & H. Thompson, *supra* (see n. 14).