HAMILTON INDUSTRIES INC., SUCCESSOR OF MAYLINE
COMPANY, INC. AND SUBSIDIARY, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 24006-88.　　　Filed July 30, 1991.

*Leslie J. Schneider* and *Patrick J. Smith*, for the petitioner.

*Wilton A. Baker* and *Dianne I. Crosby*, for the respondent.

WELLS, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income tax:

| TYE June 30 | Deficiency |
|---|---|
| 1977 | $31,210 |
| 1980 | 755,228 |
| 1981 | 1,952,926 |
| 1982 | 1,464,788 |
| 1983 | 197,751 |
| 1984 | 129,846 |

After concessions, the issues remaining for decision are: (1) Whether respondent's determination that inventory acquired as part of petitioner's purchases of other businesses should be treated as pools or items separate from raw materials purchased or inventory manufactured subsequent to such acquisitions constituted a change in petitioner's method of accounting for inventories; (2) whether respondent abused his discretion in making the foregoing determination; (3) whether petitioner used the completed contract method of accounting for long-term contracts; (4) whether petitioner's income was clearly reflected where it offset income from a long-term contract with LIFO inventory costs calculated in the year that it recognized income from such long-term contract; and (5) whether respondent properly disallowed certain depreciation deductions claimed by petitioner.

## FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91.[1] The stipulations and accompanying exhibits are incorporated in this opinion by reference irrespective of any restatement below.

Petitioner is a corporation with its principal place of business in Des Plaines, Illinois. Prior to December 26, 1986, petitioner was a subsidiary of Mayline Co., Inc. (Mayline), and became the successor in interest of Mayline as of December 26, 1986. Mayline used an accrual method of accounting for tax purposes. For taxable years ending in 1975 and 1976, Mayline used a fiscal year ending April 30.

---

[1] Except as otherwise noted, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

During the taxable years in issue, Mayline's annual accounting period for tax purposes ended on June 30.

Mayline was incorporated on March 12, 1975, but did not engage in business prior to May 1, 1975. On March 25, 1975, Mayline entered into an agreement to purchase substantially all of the assets, including all of the inventory, of Mayline Co., Inc. (old Mayline). The price paid for old Mayline's assets was $3 million, plus assumption of old Mayline's liabilities. The agreement specifically allocated the purchase price among the assets acquired, excepting inventory. The residue of the purchase price was allocated to inventory. On the date that the sale was closed, April 29, 1975, old Mayline valued its inventory at $2,034,680.48 under the first-in, first-out (FIFO) convention.

Mayline allocated $79,028.32 of the purchase price to the inventory purchased from old Mayline, which was further allocated among each item of inventory in proportion to its relative FIFO value in old Mayline's inventory at April 29, 1975. After the purchase, Mayline continued old Mayline's business of manufacturing drafting equipment and related furniture and accessories. Acquisition of old Mayline's inventory was necessary to continue such business. The products produced after the acquisition were identical to those produced by old Mayline prior to the sale. In maintaining its inventory records, Mayline made no distinction between inventory purchased in the acquisition of the assets of old Mayline and inventory subsequently purchased or produced. After the acquisition, Mayline also purchased drafting equipment and furniture as inventory for resale.

On its return for its taxable year ended April 30, 1975, Mayline elected to use the dollar value last-in, first-out (LIFO) inventory accounting method for its entire inventory. Mayline also elected to include its entire inventory in a single natural business unit (NBU) pool and to use the double extension method in computing the LIFO value of its NBU pool. On April 30, 1975, Mayline's inventory consisted only of the inventory it had purchased from old Mayline. Mayline possessed an itemized listing of the inventory acquired from old Mayline. In subsequent years, Mayline treated the amount of the purchase price it had allocated to

old Mayline's inventory as the base-year cost for inventoriable items it purchased and manufactured.

Hamilton Industries, Inc. (Hamilton), was incorporated May 12, 1982, as a wholly owned subsidiary of Mayline, but did not engage in business prior to June 28, 1982. Hamilton used the accrual method of accounting to compute taxable income. On May 19, 1982, Hamilton entered into an agreement to purchase substantially all of the assets, including all of the inventory, of the Two Rivers Division of the Hamilton Division of American Hospital Supply Corp. (Two Rivers). The purchase price equaled $31,300,000, plus assumption of certain liabilities. After the acquisition, Hamilton continued Two Rivers' business of manufacturing laboratory and hospital case goods and furniture. Purchase of Two Rivers' inventory was necessary to continue such business.

Two Rivers used the LIFO convention to value its inventory, and, as of June 28, 1982, the closing date of the sale, it valued such inventory at $6,550,262. The inventory also was valued under the FIFO convention at $16,566,320. The amount of the purchase price allocated to the inventory equaled its LIFO value in Two Rivers' hands, $6,550,262, which was further allocated among the items in inventory on the basis of their relative value as compared to the total inventory, determined using the FIFO convention. In keeping its inventory records, petitioner did not distinguish between inventory purchased from Two Rivers as part of the acquisition and inventory purchased or produced subsequently.

On its initial tax return, filed for the taxable year ended June 30, 1982, Hamilton elected to use the dollar value LIFO method of valuing its inventory. Hamilton also elected to include its entire inventory in a single NBU pool, and to use the double extension method in computing the LIFO value of its NBU pool. On June 30, 1982, Hamilton's inventory primarily consisted of inventory purchased from Two Rivers. For taxable year ended June 30, 1982, Hamilton considered the cost of its earliest inventory acquisitions during the year to be the FIFO inventory values shown on the books of Two Rivers on June 28, 1982. In subsequent tax years, Hamilton treated the amount of the purchase

price it had allocated to the inventory purchased from Two Rivers as the base-year cost for such inventoriable items.

Generally, petitioner's business was limited to the manufacture of goods for its customers; occasionally, however, it also contracted to install on customers' premises office furnishings petitioner manufactured. On average, such installation contracts required up to 24 months to complete, although a small number required more time. Petitioner included payments with respect to such contracts in gross income 90 days after installation was completed, when the customer was deemed to have accepted the work. Petitioner accumulated the cost of producing furniture and cabinetry pursuant to such contracts in its LIFO inventories. Petitioner allocated costs to inventory under the "full absorption" costing rules of section 1.471-11, Income Tax Regs. On its initial return, covering the taxable year ended June 30, 1982, Hamilton elected to account for income from long-term contracts under the "accrual acceptance" method. Hamilton's audited financial statements for fiscal years ending in 1983 and 1984 stated that it used the accrual acceptance method to account for long-term contracts for tax purposes, but that it accrued income from such contracts for financial statement purposes when components of the contract were completed and shipped to the customer.

Included in the assets purchased by Hamilton from Two Rivers were 3-year accelerated cost recovery system (ACRS) property with a cost of $2,048,993 and 5-year ACRS property with a cost of $10,659,386. In the consolidated return for the tax year ended June 30, 1982, filed by the affiliated group of which Hamilton was a part, petitioner claimed an ACRS depreciation deduction for such property under section 168. The total amount of ACRS depreciation claimed with respect to such property was $2,111,156. Respondent, however, disallowed all but one-twelfth of the amount claimed.

OPINION

The issues in the instant case fall into three principal groups which we will discuss under separate headings: Accounting for Inventories Purchased in Acquisitions; Petitioner's Method of Accounting for Long-Term Contracts;

and Depreciation of ACRS Property Acquired From Two Rivers.

## Accounting for Inventories Purchased in Acquisitions

Respondent determined that petitioner incorrectly combined inventory received in the old Mayline and Two Rivers acquisitions with raw materials purchased and inventory manufactured subsequent to such transactions for purposes of valuing its closing inventory. We first will discuss whether section 481 applies to respondent's change in petitioner's accounting treatment of its inventories and then, in turn, we will review respondent's section 446(b) determinations.

### 1. Applicability of Section 481

Respondent treated his determination with respect to the old Mayline transaction as a change in petitioner's method of accounting for inventory and made a section 481(a) adjustment increasing petitioner's income with respect to the old Mayline acquisition in the taxable year ended June 30, 1981, the earliest open taxable year. The determination with respect to the treatment of inventory acquired from old Mayline affected taxable years closed by the statute of limitations, and respondent included income attributable to such years in the section 481(a) adjustment. To avoid omissions or duplications occurring solely by reason of an accounting method change, section 481 permits the Commissioner to include in the required adjustment amounts attributable to taxable years with respect to which assessment is barred by the statute of limitations. *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 572 (5th Cir. 1965); *Superior Coach of Florida, Inc. v. Commissioner*, 80 T.C. 895, 912 (1983).

In an effort to avoid application of section 481, petitioner contends that respondent's determination does not effect a change in petitioner's method of accounting. Accordingly, we must consider the nature of respondent's determination. The applicable regulations define a change in method of accounting as "a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." Sec.

1.446-1(e)(2)(ii), Income Tax Regs. A "material item" is "any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)*(a)*, Income Tax Regs. The regulations further provide that "a change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)*(b)*, Income Tax Regs.

Consequently, where the Commissioner's determination alters a taxpayer's practice which has resulted in the postponement of income recognition, such determination causes a change in method of accounting. *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 797-800 (11th Cir. 1984); *Wayne Bolt & Nut Co. v. Commissioner*, 93 T.C. 500, 510 (1989). Where, however, a taxpayer entirely avoids the inclusion of income in any year, by, for instance, claiming erroneous deductions, a determination disallowing such deductions does not constitute a change in method of accounting, and section 481 is not available to correct years barred by the statute of limitations. *Schuster's Express, Inc. v. Commissioner*, 66 T.C. 588, 596-597 (1976), affd. without published opinion 562 F.2d 39 (2d Cir. 1977).

We previously have considered whether adjustments by the Commissioner to correct undervaluations of inventory constitute accounting method changes. *Wayne Bolt & Nut Co. v. Commissioner*, 93 T.C. at 508-512; *Thomas v. Commissioner*, 92 T.C. 206, 217-221 (1989); *Superior Coach of Florida, Inc. v. Commissioner*, 80 T.C. at 908-914; *Primo Pants Co. v. Commissioner*, 78 T.C. 705, 720-725 (1982). We have held that the use of a practice which results in an understatement of closing inventory postpones, and does not avoid, the inclusion of income, because the income not included due to such understatement in value eventually will be taken into account at such time as closing inventory is correctly stated, as when, for instance, a liquidation of inventory occurs. *Primo Pants Co. v. Commissioner*, 78 T.C. at 723-725. Consequently, a change in the method of valuing closing inventory constitutes a change in method of accounting to which section 481 applies. Sec. 1.446-1(e)(2)(ii)*(a)*, Income Tax Regs. ("Changes in method of

accounting include * * * a change involving the method or basis used in the valuation of inventories").

In the instant case, respondent determined that it was improper to include inventory purchased in the old Mayline and Two Rivers acquisitions in the same inventory pool or items as raw materials acquired and inventory manufactured subsequent to such acquisitions. Respondent determined that the combination resulted in an understatement of the value of closing inventory, in that use of the bargain acquisition cost of the purchased inventory as the base year inventory cost permitted an excessive amount of cost attributable to newly manufactured inventory to flow into cost of goods sold, thus reducing taxable income. The recognition of such income, however, merely has been postponed until such time as a sufficient liquidation of inventory occurs to permit the acquisition cost to be included in cost of goods sold. Consequently, because respondent's adjustments affect the timing of the inclusion of income deferred by petitioner, we hold that they constitute a change in method of accounting.

Petitioner also argues that the combination of inventory acquired from Mayline and Two Rivers with goods purchased or produced later did not establish a method of accounting because such acquisitions were isolated transactions effected by separate taxable entities. Petitioner also contends that the determination of when a new item comes into existence is so factual as not to rise to the level of an accounting method. We disagree. Petitioner and its predecessors consistently did not differentiate between inventory acquired from Mayline and later acquired or produced items for purposes of figuring taxable income, thus causing the combination of the two types of inventory to become a method of accounting. Furthermore, the regulations provide that a taxpayer's accounting treatment of any item constitutes an accounting method. Sec. 1.446-1(a)(1), Income Tax Regs. The inventory acquired from old Mayline constitutes an "item" within the meaning of the regulation. Accordingly, we hold that petitioner's accounting treatment of the inventory acquired from old Mayline constitutes a method of accounting. Consequently, we hold that section 481

permits respondent to make an adjustment with respect to closed years during the earliest open year in issue.

## 2. *Review of Determinations Made Under Section 446(b)*

Having decided that respondent's determination constitutes a change in petitioner's method of accounting for its inventory, we now will consider whether that determination is to be sustained. Because a taxpayer's inventory valuation constitutes a method of accounting, the treatment of inventories for tax purposes is governed by sections 446 and 471. *Rockwell International Corp. v. Commissioner*, 77 T.C. 780, 808 (1981), affd. 694 F.2d 60 (3d Cir. 1982); *Thor Power Tool Co. v. Commissioner*, 64 T.C. 154, 165-166 (1975), affd. 563 F.2d 861 (7th Cir. 1977), affd. 439 U.S. 522 (1979). Sections 446 and 471 grant the Commissioner broad discretion in matters of inventory accounting and give him wide latitude to adjust a taxpayer's method of accounting for inventory so as to clearly reflect income. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532-533 (1979); *Thomas v. Commissioner*, 92 T.C. at 220. For tax purposes, the requirement that a method of accounting clearly reflect income is paramount. *Thomas v. Commissioner*, 92 T.C. at 220. Even if a method of accounting comports with generally accepted accounting principles, consistently applied, where such method does not clearly reflect income, such method will not control for tax purposes. *Thor Power Tool Co. v. Commissioner*, 439 U.S. at 538-544; *Sandor v. Commissioner*, 62 T.C. 469, 477 (1974), affd. 536 F.2d 874 (9th Cir. 1976).

The Commissioner's determination with respect to clear reflection of income is entitled to more than the usual presumption of correctness, and the taxpayer bears a heavy burden of overcoming a determination that a method of accounting does not clearly reflect income. *Rotolo v. Commissioner*, 88 T.C. 1500, 1513-1514 (1987); *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029, 1044-1045 (1982). If a taxpayer establishes that a method of accounting clearly reflects income, however, the Commissioner may not disturb the taxpayer's choice. *Rotolo v. Commissioner*, 88 T.C. at 1514; *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1045. Whether

a particular method of accounting clearly reflects income is a question of fact, and the issue must be decided on a case-by-case basis. *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1045.

Once the Commissioner determines that a taxpayer's method does not clearly reflect income, he may select for the taxpayer a method which, in his opinion, does clearly reflect income. Sec. 446(b). The taxpayer carries the burden of showing that the method selected by the Commissioner is incorrect, and such burden is extremely difficult to carry. *Photo-Sonics, Inc. v. Commissioner*, 42 T.C. 926, 933 (1964), affd. 357 F.2d 656 (9th Cir. 1966). The Commissioner's determination as to the proper method of accounting for inventory must be upheld unless shown to be plainly arbitrary. *Lucas v. Kansas City Structural Steel Co.*, 281 U.S. 264, 271 (1930); *Richardson Investments, Inc. v. Commissioner*, 76 T.C. 736, 745 (1981). With the foregoing precepts in mind, we now will review respondent's specific determinations with respect to petitioner's method of valuing its inventory.

a. *Dollar Value LIFO*

To set the stage for our review of respondent's determinations, a discussion of the dollar value LIFO method of inventory accounting, used by petitioner to determine its closing inventory, is helpful.

In a manufacturing business, gross income from sales means total sales less cost of goods sold. Sec. 1.61-3(a), Income Tax Regs.; *Rotolo v. Commissioner*, 88 T.C. at 1514. Cost of goods sold during a year is determined by subtracting the value of inventory on hand at the end of the year from the sum of the value of inventory on hand at the beginning of the year and the cost of purchasing or producing goods during the year. *Rotolo v. Commissioner*, 88 T.C. at 1514-1515. As a general matter, keeping the ending inventory as low as possible so that the cost of goods sold, an offset to gross receipts, is made as large as possible, minimizes taxable income. *Thomas v. Commissioner*, 92 T.C. at 217; *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1053.

Section 471 requires taxpayers to use inventories whenever necessary to clearly reflect income. *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. 708, 719 (1981). Maintenance of inventories is necessary where the production, purchase, and sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs. Inventories must be maintained on a basis that conforms as nearly as possible to the best accounting practice in the taxpayer's trade or business and that most clearly reflects income. Sec. 471(a); *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. at 719-722. Inventories are intended to ensure a clear reflection of income by matching sales during the taxable year with the costs attributable to such sales. *Rotolo v. Commissioner*, 88 T.C. at 1515. Taxpayers have some choice, however, as to the manner in which inventories may be maintained.

Section 472 permits taxpayers to value inventories under the last-in, first-out (LIFO) convention, which deems closing inventory to consist of the earliest purchased goods. Sec. 472(b)(1). By matching the cost of the most recently purchased goods with current sales revenue, the LIFO convention removes from current earnings any artificial profits attributable to inflationary increases in inventory costs. *Amity Leather Products Co. v. Commissioner*, 82 T.C. 726, 732 (1984). The subject inflation is the rise in the taxpayer's own inventory cost, not the overall increase of prices in the economy. Consequently, the taxpayer's own inventory cost data generally is used to determine the degree of increase occurring in inventory costs during the taxable year. Sec. 1.472-8(e)(2) and (3), Income Tax Regs. (describing cost data to be used under dollar value LIFO and limitations on use of price indexes).

Two principal methods of computing the closing inventory figure under the LIFO convention are permitted by the regulations: the specific goods method, a measure of inventory in terms of physical units of individual items, see sec. 1.472-2, Income Tax Regs., and the dollar value method, a measure of inventory in terms of dollars. See sec. 1.472-8, Income Tax Regs.; *Hutzler Brothers Co. v. Commissioner*, 8 T.C. 14, 24-25 (1947). Petitioner used the dollar value method to calculate its closing inventory under the LIFO convention. Under the dollar value method, inventory is

grouped into "pools" composed of "items" for purposes of calculating changes in the dollar value of inventory carried. Sec. 1.472-8(a), Income Tax Regs. In order to determine whether inventory has increased or decreased during the year, ending inventory is valued in dollars equivalent in value to the dollars used to value beginning inventory. *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 732. Petitioner chose the "double extension" method of computing the LIFO value of its inventory pool, one of four methods permitted by the regulations. Sec. 1.472-8(e), Income Tax Regs.

Under the double extension method, the value of all items in closing inventory is calculated at both base and current year cost. Sec. 1.472-8(e)(2)(i), Income Tax Regs. "Base year cost" is the cost of items in the inventory pool for the year that the LIFO convention initially is adopted. Sec. 1.472-8(a), Income Tax Regs. Items may enter and leave the pool over time; items entering the pool after the pool has been constituted are carried either at the items' cost during the pool's base year, if the taxpayer can establish such cost, or at the items' cost in the year the items entered the pool. Sec. 1.472-8(e)(2)(iii), Income Tax Regs. Increases and decreases in closing inventory for the current year are determined by comparing the base year dollar value of the ending inventory with the base year dollar value of opening inventory. Sec. 1.472-8(e)(2)(iv), Income Tax Regs.

If an increase has occurred based on a comparison of beginning and closing inventory, expressed in terms of base year dollars, such increment is added to closing inventory as a new LIFO layer. If a decrease from beginning inventory occurs in closing inventory, such decrease, expressed in base year dollars, is subtracted from opening inventory, as expressed in base year dollars, reducing in reverse order the most recently added increments to beginning inventory. Sec. 1.472-8(e)(2)(iv), Income Tax Regs.

Once the total closing inventory is calculated in base year dollars, the LIFO value of each layer must be calculated. To arrive at such value, each layer of inventory, expressed in base year dollars, is multiplied by a price index representing the ratio of base year cost to the inventory cost for the year such layer was added to closing inventory. Sec. 1.472-

8(e)(2)(iv), Income Tax Regs. The values for all such layers are summed to yield a closing inventory figure for the current year. Such figure then is subtracted from the sum of the values for beginning inventory and purchases during the year to produce the cost of goods sold for the current year. *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. at 722. The dollar value method thus ensures that any increase in the cost of property passing through the inventory during the year is reflected in the cost of goods sold; however, the method does not discriminate between cost increases attributable to inflation, which the method was intended to reflect, and increases caused by other factors.

Accordingly, the proper grouping of goods into pools and items is central to the operation of the dollar value method. *Wendle Ford Sales, Inc. v. Commissioner*, 72 T.C. 447, 452-453 (1979). In order to produce a clear reflection of income, the goods contained in a taxpayer's pool and item categories must have similar characteristics, as determined under the standards applicable to each. *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 734-735. A system which groups like goods together and separates dissimilar goods permits cost increases attributable to inflation[2] to be isolated and accurately measured. *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 731-734. The more homogenous that each category can be made, the better it will screen out cost increases caused by noninflationary factors, thus producing a clearer reflection of income than would be possible with categories containing heterogenous agglomerations of goods.

In the instant case, respondent determined that petitioner's method of accounting for its inventory under the dollar value LIFO method did not result in a clear reflection of income because, respondent asserts, inventory purchased in the acquisitions of Mayline and Two Rivers should not have been included in the same pool or item categories as inventory manufactured after the acquisition. Accordingly, we will consider the proper scope and definition of such terms in deciding whether petitioner has carried the heavy

---

[2]The intention of the LIFO method is to allow inflation to pass into the cost of goods sold. *Mohawk Liqueur Corp. v. United States*, 324 F.2d 241, 243-244 (6th Cir. 1963); *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. 708, 722-723 (1981).

burden of showing respondent's determination to be arbitrary. *Richardson Investments, Inc. v. Commissioner*, 76 T.C. 736, 745 (1981).

b. *The Inventory "Pooling" Issue*

We must decide whether petitioner properly included the finished inventory manufactured by old Mayline and Two Rivers prior to their acquisition by petitioner in the LIFO inventory pool maintained for raw materials acquired and goods manufactured subsequent to such acquisitions.[3] Under the dollar value LIFO method of valuing inventories, the entire inventory investment of a business, including raw materials, work-in-process, and finished products, is to be placed in inventory pools. Sec. 1.472-8(b)(1), Income Tax Regs.

The regulations governing the dollar value method of valuing LIFO inventories generally provide that the items properly includable in an inventory pool are to be determined with reference to the "natural business unit" of the taxpayer, and that each such unit will use a separate pool. Sec. 1.472-8(b), Income Tax Regs. The natural business divisions adopted by the taxpayer are important in determining the identity of its natural business units. Sec. 1.472-8(b)(2)(i), Income Tax Regs. See also *Richardson Investments, Inc. v. Commissioner*, 76 T.C. at 746-747; *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. at 727-730 (pools generally are defined by the product lines or departments within a taxpayer's business). The regulations provide, however, that a manufacturer of goods which also is engaged in wholesaling or retailing goods purchased from others must use separate pools for its manufacturing and reselling operations. Sec. 1.472-8(b) and (c), Income Tax Regs.; *Amity Leather Products Co. v. Commissioner*, 82 T.C. 726, 734-736 (1984).

Previously, we have had occasion to consider the circumstances under which a taxpayer is subject to the separate

---

[3]Petitioner concedes that finished inventory purchased for resale after the acquisition of old Mayline should have been placed in a separate LIFO pool, but disputes respondent's computations with respect to such separate pool as shown on the notice of deficiency. No evidence has been offered concerning the nature of such dispute. At trial, we granted petitioner's motion to allow introduction of its inventory accounting records solely for purposes of making any Rule 155 computation required pursuant to our decision.

pooling requirements by virtue of being both a manufacturer and wholesaler or retailer of merchandise. In *Amity Leather Products*, we upheld the reasonableness of the regulations requiring separate inventory accounting for such functions, and held that, where the taxpayer manufactured leather goods and regularly purchased identical goods from a subsidiary for resale, it was required to maintain separate pools for manufactured and purchased inventory. 82 T.C. at 738.

Recently, however, we have rejected an attempt by the Commissioner to apply the separate pooling requirement of section 1.472-8(b), Income Tax Regs., to a taxpayer because of the purchase of inventory occurring as part of the acquisition of a manufacturing business which the taxpayer then carried on. *UFE, Inc. v. Commissioner*, 92 T.C. 1314 (1989). In *UFE*, we held that the purchase and subsequent sale of such inventory did not constitute a business of the taxpayer separate from its manufacturing business. 92 T.C. at 1321-1322. We therefore held that such activity did not constitute a "natural business unit" separate from the taxpayer's manufacturing business. *UFE, Inc. v. Commissioner*, 92 T.C. at 1321-1322. Furthermore, we held that the taxpayer was not a wholesaler or retailer of goods based on a single, isolated purchase occurring in the context of the acquisition of an ongoing manufacturing business. 92 T.C. at 1322. We therefore permitted the taxpayer to combine both its purchased and manufactured inventory in the same pool. 92 T.C. at 1322. The instant case presents the same situation as *UFE*.

As in *UFE*, in the instant case, petitioner acquired all of the inventory, comprising raw materials, work-in-process, and finished products, of its targets as part of the acquisition of the assets of such businesses. The character and class of the purchased inventory was the same as that subsequently manufactured by petitioner. Petitioner continued old Mayline's and Two Rivers' businesses, and the acquisition of the finished inventory, which was an integral part of the ongoing operations of such businesses, was essential to such continuation. *UFE, Inc. v. Commissioner*, 92 T.C. at 1322. The isolated purchases of inventory occurring as part of larger business acquisitions did not

render petitioner the type of "dual-function entity" that the taxpayer in *Amity Leather Products* was rendered. Petitioner therefore should not be subjected to the separate pooling requirement of the regulations. Accordingly, we hold that requiring separate pools would distort income, and that use of a single pool "serves the overriding purpose of the LIFO regulations, which is to match current costs against current income." *UFE, Inc. v. Commissioner*, 92 T.C. at 1322. Consequently, we find that respondent abused his discretion and hold for petitioner on the inventory "pooling" issue.

### c. *The "Item" Issue*

The next issue for our consideration is whether the purchased and manufactured inventory within petitioner's natural business unit pool should be treated as the same "items" or as different items for purposes of calculating inventory value under the "double-extension method." See sec. 1.472-8(e)(2), Income Tax Regs. Respondent determined that combining inventory acquired in the old Mayline and Two Rivers acquisitions with inventory purchased or manufactured subsequently did not result in a clear reflection of income. Respondent determined that, to clearly reflect petitioner's income, inventory purchased incident to such acquisitions should be treated as items separate from inventory acquired or manufactured afterwards. Our task is to decide whether respondent abused his discretion in making that determination.

While neither the Code nor the regulations define the term "item," some relevant case law exists. In *Wendle Ford Sales, Inc. v. Commissioner*, 72 T.C. 447, 455 (1979), we held that the concept of an item was flexible enough to include minor technical and stylistic changes made in a product over time. Furthermore, we have held that the definition of the term must not be so narrow as to impose unreasonable administrative burdens upon taxpayers, thus rendering impractical the taxpayer's use of the double-extension method of dollar value LIFO inventory valuation. *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 734. In *Amity Leather Products*, the only case we have decided dealing with the meaning of the term in the context of a

manufacturing business, we stated that the term should be construed "in a manner that most closely satisfies the purpose of maintaining inventories, i.e., the clear reflection of income." 82 T.C. at 740.

Goods may be in separate item categories because they have substantially dissimilar characteristics, whether in terms of their physical nature, *Wendle Ford Sales, Inc. v. Commissioner*, 72 T.C. at 459, or whether in terms of their cost. *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 739-740. In *Amity Leather Products*, we cautioned that permitting the grouping of products possessing dissimilar cost characteristics within the same item category could lead to a distortion of income, stating:

> The nature of "items" in a pool must be similar enough to allow a comparison between ending inventory and base-year inventory. Because the change in the price of an item determines the price index and the index affects the computation of increments or decrements in the LIFO inventory, the definition and scope of an item are extremely important to the clear reflection of income. If factors other than inflation enter into the cost of inventory items, a reliable index cannot be computed. For example, if a taxpayer's inventory experiences mix changes that result in the substitution of less expensive goods for more expensive goods, the treatment of those goods as a single item increases taxable income. This occurs because any inflation in the cost of an item is offset by the reduction in cost resulting from the shift to less expensive goods. *Conversely, if changes in mix of the inventory result in the substitution of more expensive goods for less expensive goods, the treatment of those goods as a single item decreases taxable income because the increase in inventory costs is eliminated from the LIFO cost of the goods as if such cost increase represented inflation.*
>
> A narrower definition of an item within a pool will generally lead to a more accurate measure of inflation (i.e., price index) and thereby lead to a clearer reflection of income. * * *
>
> [*Amity Leather Products Co. v. Commissioner*, 82 T.C. at 733-734; emphasis added.]

In *Amity Leather Products*, we were presented with a situation in which grouping two classes of goods within the same item category would have resulted in the substitution of less expensive goods for more expensive ones, thus overstating the taxpayer's income. 82 T.C. at 739-740. In the instant case, however, we are presented with the converse setting, that is, petitioner seeks to fill its inventory with goods purchased at a steep discount, and then

replace them with goods purchased and produced at higher cost. The difference between petitioner's base year inventory cost and inventory cost incurred after the acquisitions is not attributable to inflation, but rather to the artificially low value assigned base year inventory as compared to the cost of subsequently purchasing or producing such inventory at prevailing market prices. The consequence of permitting such replacement is an increase in the cost of goods sold, resulting in an understatement of petitioner's income.

In the old Mayline acquisition, inventory valued at $2,034,680.48 under the FIFO convention was given a value of $79,028.32, a discount of 96 percent from its preacquisition value. Such value was fixed simply by assigning to inventory the amount of the purchase price not otherwise allocated to other assets purchased. Similarly, the inventory acquired from Two Rivers was entered on petitioner's books at its LIFO value of $6,550,262, while its FIFO value was $16,566,320, a discount of over 60 percent.[4] Petitioner's use of the FIFO values of the acquired inventory to allocate the assigned cost among the inventory items acquired from its targets and its use of the FIFO values of the inventory acquired from Two Rivers to value its first purchases of inventory after the acquisition suggest that such values were more representative of the actual cost or value of the inventory purchased in the acquisitions than the amount of the purchase price allocated to it under the purchase and sale agreements.

The disparity between the value assigned and the FIFO value of the inventory acquired from old Mayline and Two Rivers indicates that petitioner purchased such inventory at a substantial discount from its replacement cost or market value, and that such inventory therefore possessed materially different cost characteristics from inventory purchased or produced after the acquisitions. We hold that the significantly large bargain element represented by such discount caused inventory acquired to assume a different character from inventory purchased or produced at market

---

[4]By assigning an amount of the purchase price equal to the LIFO value of Two Rivers' inventory, it appears as though petitioner attempts to carry over the tax attributes of its target's inventory, which generally is possible only in the course of a liquidation of a subsidiary under sec. 332 or in a reorganization. Sec. 381.

prices, as represented by the FIFO value of the inventory, after the acquisition.

Petitioner argues that if it obtained a bargain on the purchase of old Mayline's and Two Rivers' assets, it is appropriate that a portion of the bargain be allocated to the inventory purchased. We agree that such an allocation is permissible under *UFE, Inc. v. Commissioner*, 92 T.C. 1314, 1322 (1989). We do not believe, however, that permitting a taxpayer to defer recognition of the gain realized on the disposal of such assets by means of accounting devices is appropriate under the circumstances of the instant case. If petitioner were permitted to combine the bargain cost inventory with goods carried at higher cost, representing the current costs of production, petitioner could postpone recognition of the gain realized on disposal of the bargain cost inventory until such time as it decided to permit a liquidation of inventory, thus allowing such bargain cost to flow into cost of goods sold.[5]

In order to clearly reflect income, petitioner should be required to recognize the gain inherent in the bargain cost inventory at the time such gain is realized, rather than at a later time of petitioner's choosing. Such a requirement is in harmony with the matching principle which is at the heart of the inventory accounting rules. To hold otherwise would permit petitioner to include the cost increases attributable to the replacement of bargain cost inventory with inventory produced at prevailing market prices in the cost of goods sold as though such cost increases were attributable to inflation. The LIFO method was not intended to permit taxpayers to include in cost of goods sold cost increases attributable to the replacement of goods with low cost characteristics with goods possessing higher cost characteristics. See *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 733-734.

---

[5]Petitioner's method is somewhat akin to the "base stock" method of accounting, under which an amount of inventory equal to the minimum quantity required to operate the business was carried on the taxpayer's books at an artificially low price, and all inventory costs above the base stock figure were carried into cost of goods sold. See S. Gertzman, Federal Tax Accounting, par. 7.02[2] (1988); R. Hoffman & H. Gunders, Inventories: Control, Costing, and Effect Upon Income and Taxes, 169-173 (2d ed. 1970). The base stock method is not a permissible method of tax accounting because it "obscures the true gain or loss of the year and, thus, misrepresents the facts." *Lucas v. Kansas City Structural Steel Co.*, 281 U.S. 264, 269 (1930).

Thus, even though the two classes of inventory were physically the same, the great disparity in their cost warrants separating them. Accordingly, we hold that the inventory acquired in the old Mayline acquisition and the inventory acquired in the Two Rivers acquisition should be treated as items separate from the inventory acquired or produced subsequent to such acquisitions. Such treatment avoids a distortion of petitioner's income, produces a better measure of inflation, and results in a clear reflection of petitioner's income.[6] *Amity Leather Products Co. v. Commissioner*, 82 T.C. at 740.

Petitioner argues that distinguishing between the two types of inventory will be burdensome. We note, however, that the difficulty petitioner faces is largely of its own making. The basis for our holding that the inventory purchased from old Mayline and Two Rivers should be treated separately is that its cost characteristics were so greatly disparate from later acquired inventory that separate treatment was required in order to avoid a distortion of income. Had the cost characteristics assigned the inventory acquired in the purchases of old Mayline and Two Rivers not been so disparate from the cost of later acquired inventory, we would not have required their separation.

Furthermore, we are not persuaded by petitioner's claims that separate accounting for the two items will impose an undue burden on petitioner. The inventory acquired in the purchase of old Mayline and Two Rivers was identifiable at the time of the purchases and could have been tracked as it was liquidated by sales in the course of petitioner's business. Moreover, we find that eliminating the significant distortion in petitioner's income which resulted from com-

---

[6]We do not mean to suggest that every bargain purchase of inventoriable property will require the creation of new items within the dollar value LIFO pool, as occasional purchases concluded on advantageous terms are to be expected in the course of normal business activities. Moreover, where a taxpayer uses LIFO, the gain realized upon sale of such goods probably will be recognized within a short time, unless an increase in closing inventory prevents such bargain cost from flowing into cost of goods sold. Consequently, an isolated bargain purchase in the course of an ongoing business differs materially from the case where a taxpayer attempts to value its entire base-year inventory at bargain cost.

Creation of a new item for tax accounting purposes on the basis of differences in cost characteristics is required only where necessary to clearly reflect income, and the issue is to be resolved on a case-by-case basis. *Amity Leather Products Co. v. Commissioner*, 82 T.C. 726, 739-740 (1984); *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029, 1045 (1982).

bining the two types of inventory warrants the burden that might be imposed on petitioner.

Petitioner also argues that respondent's method of correcting its inventories might not be completely accurate. Respondent treated all of the inventory acquired from old Mayline and Two Rivers as having been sold in the first full taxable year following each acquisition, thus causing petitioner to recognize the full amount of gain from its bargain inventory purchase in such year. Petitioner points out that not all of the inventory may have been sold during such year.

Petitioner, however, must do more than suggest that respondent's method is less than perfect in order to carry its burden; rather, petitioner must show respondent's action to be arbitrary. *Coors v. Commissioner*, 60 T.C. 368, 395, 398 (1973), affd. 519 F.2d 1280 (10th Cir. 1975); *All-Steel Equipment, Inc. v. Commissioner*, 54 T.C. 1749, 1758-1759, 1760-1762 (1970), affd. on this issue 467 F.2d 1184 (7th Cir. 1972); *Photo-Sonics, Inc. v. Commissioner*, 42 T.C. 926, 933-934 (1964), affd. 357 F.2d 656 (9th Cir. 1966). Petitioner maintained no records to show the period over which the purchased inventory actually was liquidated, and so has no basis for demonstrating the alleged inaccuracy. Under the circumstances of the instant case, we refuse to hold that respondent's assumption is arbitrary and accordingly uphold his determination with respect to the "item" issue.

### Petitioner's Method of Accounting for Long-Term Contracts

Respondent determined that, for certain taxable years in issue, Hamilton used the completed contract method[7] of

---

[7]We note that taxpayers generally may no longer use the completed contract method in determining when to take into account income and expense allocable to a long-term contract. Sec. 460(a). Between 1986 and 1988, Congress progressively reduced the amount of income from such contracts that could be reported on the basis of accounting methods other than the percentage of completion method. See sec. 5041, Technical and Miscellaneous Revenue Act of 1988, 102 Stat. 3673; sec. 10203, Revenue Act of 1987, 101 Stat. 1330-394; sec. 804, Tax Reform Act of 1986, 100 Stat. 2358. In 1989, Congress required accounting for all long-term contracts entered into after July 10, 1989, under the percentage of completion method, excepting only a limited class of construction contracts. Sec. 7621(d)(1), Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2376. Under the percentage of completion method, taxpayers are required to include in income in each tax year the contract is performed a percentage of the gross income derived from the contract equal to the percentage of the total estimated expense attributable to the contract incurred for such year. Sec. 460(b).

accounting for income received from long-term contracts covering the installation of Hamilton's products on customers' premises, and determined that Hamilton improperly allocated costs to such contracts under its LIFO inventory accounting system. Petitioner disputes respondent's determinations.

We first will address petitioner's contention that it did not use the completed contract method of accounting. A "long-term contract" is defined as "a building, installation, construction or manufacturing contract which is not completed within the taxable year it is entered into." Sec. 1.451-3(b)(1), Income Tax Regs. The contracts in issue called for the installation of cabinetry and office furniture manufactured by petitioner and required, on average, 24 months to complete. Consequently, such contracts constitute long-term contracts, as defined by the regulation.

Petitioner contends that it used an "accrual acceptance" method to account for its long-term contracts, and that its accounting practices with respect to such contracts conformed to the principles of such method. Respondent's determination that petitioner used the completed contract method of accounting, however, is presumed correct, and petitioner has the burden of proving the contrary. *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029, 1039 (1982).

Prior to the passage of section 460 in 1986, taxpayers enjoyed a fair amount of latitude in choosing a method of accounting for long-term contracts. Under section 1.451-3(a)(1), Income Tax Regs, income from long-term contracts could be accounted for under the completed contract method, the percentage of completion method, or "any other method." The method used by the taxpayer, however, was required to clearly reflect income. Sec. 1.451-3(a)(1), Income Tax Regs. Taxpayers, therefore, could account for long-term contracts in a manner consistent with their overall method of accounting. *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1038-1039; *Rockwell International Corp. v. Commissioner*, 77 T.C. 780, 804 n.12 (1981), affd. 694 F.2d 60 (3d Cir. 1982).[8]

---

[8]*Berger Engineering Co. v. Commissioner*, T.C. Memo. 1961-292.

The question of which accounting method is used by the taxpayer is one of fact. *Daley v. United States*, 243 F.2d 466, 471 (9th Cir. 1957); *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1039. In distinguishing an accrual method from the completed contract method, "the controlling point is the time the costs and revenue from the contract are matched, and net income or loss ascertained." *Daley v. United States*, 243 F.2d at 471. Generally, a question concerning the identity of an accounting method used by a taxpayer is resolved by examining the manner in which the method operates and by classifying that manner of operation under the recognized method it most closely resembles. *Stephens Marine, Inc. v. Commissioner*, 430 F.2d 679, 687 (9th Cir. 1970), affg. a Memorandum Opinion of this Court; *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1040-1042; *Terminal Drilling & Production Co. v. Commissioner*, 32 T.C. 926, 932-933 (1959); *L.A. Wells Construction Co. v. Commissioner*, 46 B.T.A. 302, 306 (1942), affd. 134 F.2d 623 (6th Cir. 1943); *Bent v. Commissioner*, 19 B.T.A. 181, 185 (1930), affd. 56 F.2d 99 (9th Cir. 1932). Accordingly, in order to reach a conclusion as to the method used by petitioner, we will consider how the accrual acceptance and completed contract methods operate, paying particular attention to instances in which they differ in the treatment of identical items, and then compare such treatment to the manner for which items are accounted under petitioner's method.

Accrual method taxpayers who did not use either of the long-term contract methods prescribed in section 1.451-3, Income Tax Regs., generally used a method known as the "accrual shipment" method, under which income was accruable when the subject matter of the contract was "shipped, delivered, or accepted" by the buyer.[9] Sec. 1.446-1(c)(1)(ii), Income Tax Regs.; *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1039-1040. Recognition of advance payments made with respect to long-term contracts was deferred until the time such income ordinarily would be

[9] The term "accrual acceptance," therefore, denotes the version of the accrual shipment method under which income is accrued at the time the customer accepts the subject matter of the contract.

accruable under the taxpayer's method. Sec. 1.451-5(b)(3), Income Tax Regs.

The cost of goods sold from inventory was taken into account when title passed to the buyer, sec. 1.471-1, Income Tax Regs., and noninventory costs were taken into account when allowable under the provisions of section 461. For taxable years beginning before January 1, 1987, the cost of inventoriable goods was determined under the full-absorption cost regulations.[10] Sec. 1.471-11(a), Income Tax Regs. See generally H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 637 (describing accrual method as applied to long-term contracts). The accrual method does not require matching items of income with the expense incurred in earning them in the same accounting period; each item is taken into account independently when the "all events" test is met with respect to such item.[11] *Marquardt Corp. v. Commissioner*, 39 T.C. 443, 453 (1962) ("accrual of an item as income in a particular year is not required merely because the expenses attributable to that item were deducted from gross income in that year"); *Drazen v. Commissioner*, 34 T.C. 1070, 1077-1078 (1960).

The completed contract method, on the other hand, took a significantly different approach to accounting for long-term contracts. We previously have described the completed contract method in the following terms:

> The accounting system employed by the petitioner is the completed-contract system. It is a modification of a strict accrual method and differs in the one respect that items of income and expense, though recorded in primary accounts when accrued or incurred, are not carried into profit and loss as earnings of the business until the contract to which they relate is completed. A separate account is kept for each contract. Any debit balance in the account represents the investment in the contract and any credit balance represents unearned income until the completion of the contract. A characteristic of this system is that income earned in one accounting period may not be accounted for until a later period. It is peculiarly adapted to a business fulfilling contracts which lap over accounting periods where the ultimate gain or loss can not be accurately determined until the completion of the contract. It may be used even though the contracts call for payment on the basis of a certain

---

[10]For tax years beginning after Dec. 31, 1986, the full absorption rules were replaced by the uniform capitalization rules of sec. 263A, added to the Code by the Tax Reform Act of 1986, *supra*, which expanded the types of indirect costs required to be treated as inventory costs. See S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 1, 133-152.

[11]*Koebig & Koebig Inc. v. Commissioner;* T.C. Memo. 1964-32.

price per pound. The contracts need not run for more than a year. The Commissioner's regulations permit its use. It has been approved, for tax purposes, by the courts and by this Board. [*Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029, 1046-1047 (1982) (quoting *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. 626, 641 (1931), revd. on other grounds, 92 F.2d 825 (3d Cir. 1937)).]

With the foregoing as a backdrop, we now will identify instances in which the accrual acceptance method and the completed contract method require different treatment of the same items. The first area we will examine concerns the manner of accounting for items of income under the accrual acceptance and completed contract methods. In the instant case, however, it is not possible to distinguish between the completed contract method and the accrual acceptance methods by comparing the point in time when payments made with respect to long-term contracts are taken into account for tax purposes. Under the completed contract method, income allocable to a long-term contract is taken into account for tax purposes in the year that the contract is completed and accepted by the customer, even if payments are received prior to such time. Sec. 1.451-3(d)(1), (b)(2), Income Tax Regs.; *Guy F. Atkinson Co. v. Commissioner*, 814 F.2d 1388, 1391-1392 (9th Cir. 1987), affg. 82 T.C. 275 (1984); *Smith v. Commissioner*, 66 T.C. 213, 217-218 (1976).

Under the accrual acceptance method, as noted above, income is taken into account when the subject matter of the contract is accepted by the purchaser. Taxpayers using the accrual method of accounting, however, customarily must include advance payments in income in the year received, even though such payments may not be earned until later years. *Schlude v. Commissioner*, 372 U.S. 128 (1963); *American Automobile Association v. United States*, 367 U.S. 687 (1961); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957); *Hagen Advertising Displays, Inc. v. Commissioner*, 407 F.2d 1105 (6th Cir. 1969), affg. 47 T.C. 139 (1966); *S. Garber, Inc. v. Commissioner*, 51 T.C. 733 (1969).

The regulations, however, permit taxpayers using the accrual shipment method of accounting for long-term contracts to defer recognition of advance payments received on account of such contracts until the time such income would

otherwise be accrued under the taxpayer's accounting method. Sec. 1.451-5(b)(3), Income Tax Regs. Taxpayers, therefore, were not required to use the methods prescribed in section 1.451-3, Income Tax Regs., in order to defer recognition of payments under long-term contracts. Consequently, where a taxpayer uses the accrual acceptance version of the accrual shipment method, the ordinary operation of such method, coupled with the deferral rule of section 1.451-5(b)(3), Income Tax Regs., causes payments on long-term contracts to be included in income at the same time as under the completed contract method, thus eliminating one of the principal ways to distinguish between the two methods.

Instances exist, however, where the accrual acceptance and completed contract methods will produce different results with respect to the same items. One area in which potential differences between the accrual acceptance method and the completed contract method exist is the point in time at which expenses allocable to long-term contracts are taken into account. Under the accrual acceptance method, expenses accumulated in inventories are taken into account when the goods are accepted by the customer. See H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 637. Noninventoriable costs are taken into account when the "all events" test is met with respect to them. Sec. 1.461-1(a)(2), Income Tax Regs. Under the completed contract method, all costs allocable to a contract are recognized when the subject matter of the contract is completed and accepted. Sec. 1.451-3(d)(1), Income Tax Regs.

Additionally, the rules governing types of indirect production costs allocable to long-term contracts under the completed contract and the accrual methods differed during the years in issue. A taxpayer using the completed contract method was required to allocate a broader range of indirect costs to a contract under section 1.451-3(d)(5), Income Tax Regs.,[12] than a taxpayer using the accrual method was

---

[12]Such cost allocation rules originally were applicable to all long-term contracts accounted for under the long-term contract methods prescribed under sec. 1.451-3, Income Tax Regs. However, T.D. 8067, 1986-1 C.B. 218, limited the application of such regulations to contracts requiring 2 years or less to complete. Such limitation applied to costs incurred in taxable years beginning after Dec. 31, 1982, with respect to long-term contracts entered into after such date. Sec. 1.451-3(g)(1), Income Tax Regs. Inasmuch as nearly all of petitioner's long-term contracts required less than 2 years to complete, such provision would have governed cost allocation to its long-term contracts had petitioner used the completed contract method.

required to allocate to inventory under the full absorption costing rules of section 1.471-11, Income Tax Regs. Consequently, a showing with respect to the taxpayer's method of recognizing expenses and capitalizing costs can assist in the identification of his method of accounting.

Based upon the record in the instant case, petitioner has established the nature of the accounting method it used for long-term contracts. At trial, petitioner's financial officers testified that petitioner used the accrual acceptance method of accounting for its long-term contracts. Their description of the method used by petitioner is buttressed by additional evidence. For instance, Hamilton's audited financial statements for 1983 and 1984 stated that it used an accrual acceptance method of accounting for long-term contracts. Furthermore, petitioner calculated the product costs associated with the contracts in accordance with the full absorption costing rules of sec. 1.471-11, Income Tax Regs., and not under the rules of section 1.451-3(d)(5), Income Tax Regs., suggesting that petitioner used an accrual method to account for long-term contracts.

Petitioner's returns for the years in issue are consistent with a finding that petitioner did not use the completed contract method. Petitioner's returns do not contain any election to employ the completed contract method of accounting, which was required of taxpayers using such method under section 1.451-3(a)(2), Income Tax Regs. Furthermore, on its first return, Hamilton made an express election to report income from long-term contracts under the accrual acceptance method. Such statement appears to satisfy the requirements for a valid election, thus binding petitioner to use such method. *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075, 1082-1083 (1985), affd. 812 F.2d 158 (4th Cir. 1987). While such election is not conclusive of the method used, it is a strong circumstance to be considered. *Daley v. United States*, 243 F.2d 466, 472 (9th Cir. 1957).

We find that the absence of a statement that petitioner used the completed contract method and the presence of an election to use the accrual acceptance method furnish some evidence of petitioner's intent to use the accrual acceptance method. *Waring v. Commissioner*, 412 F.2d 800, 801 (3d Cir.

1969), affg. a Memorandum Opinion of this Court; *Rich Hill Insurance Agency, Inc. v. Commissioner*, 58 T.C. 610, 618 (1972); *First Savings & Loan Association v. Commissioner*, 40 T.C. 474, 486 (1963); *Kralstein v. Commissioner*, 38 T.C. 810, 818-819 (1962). Accordingly, we hold that petitioner has shown that it did not account for installation contracts on the completed contract method and that it used the accrual acceptance method of accounting for such contracts. Therefore, we need not address petitioner's alternative contention, namely, that it is permitted under the completed contract method to use LIFO inventory costs for the year a long-term contract is completed to determine expenses allocable to such contract because regulations issued by respondent which disallow such use are invalid.

Inasmuch as we have decided that petitioner used the accrual acceptance method of accounting for long-term contracts, under which use of LIFO inventories is concededly proper (see, e.g., sec. 1.451-3(a)(5), (d)(6)(v), Income Tax Regs.), we must consider respondent's alternative determination with respect to petitioner's use of inventories in connection with its long-term contracts. Respondent determined that, in the event we found use of inventories to be proper, petitioner's long-term contracts were to be treated as separate items within its inventory pool. Since such determination involves a change in petitioner's method of accounting, it must be sustained unless found to be arbitrary. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532-533 (1979).

The facts of the instant case demonstrate that respondent's determination is arbitrary. If the inventoriable costs allocable to each long-term contract were treated as separate items, such cost would not be taken into account until acceptance of the work occurred and a liquidation of the item took place. Such a practice, in effect, disallows use of LIFO inventories to accumulate costs and essentially forces the taxpayer to treat the inventory costs attributable to long-term contracts as deferred expenses. The accrual method, however, does not require such precise matching of income and expense. *Marquardt Corp. v. Commissioner*, 39 T.C. 443, 452-453 (1962); *Drazen v. Commissioner*, 34 T.C. 1070, 1077-1078 (1960).

Moreover, we previously have rejected the Commissioner's attempts to impose such a regime upon taxpayers using the completed contract method. *RECO Industries, Inc. v. Commissioner,* 83 T.C. 912, 921-923 (1984); *Peninsula Steel Products & Equipment Co. v. Commissioner,* 78 T.C. 1029, 1047-1052 (1982).[13] We accordingly see no reason to require it of accrual method taxpayers, especially in view of the fact that the accrual method places a lesser degree of emphasis upon exact matching of income and associated expense than does the completed contract method. See *Marquardt Corp. v. Commissioner,* 39 T.C. at 452-453. Furthermore, treating inventory allocable to long-term contracts as separate items is not required under the principles of dollar value LIFO. The items produced for long-term contracts are the same as those otherwise produced for petitioner's customers. The only distinguishing feature is that the goods produced for long-term contracts are to be installed by petitioner, while the other goods are simply shipped to the customer. We do not find such a circumstance to be sufficient basis for separating such goods from the other items in petitioner's inventory. See *Amity Leather Products Co. v. Commissioner,* 82 T.C. 726, 738-740 (1984); *Wendle Ford Sales, Inc. v. Commissioner,* 72 T.C. 447, 459-461 (1979).

We find that petitioner's income is clearly reflected under its method of accounting using LIFO inventories to accumulate costs allocable to long-term contracts. Respondent's determination disallows petitioner's use of an otherwise permissible method of accounting, substituting for it one preferred by respondent. Such a determination constitutes an abuse of discretion. *Rotolo v. Commissioner,* 88 T.C. 1500, 1514 (1987); *Molsen v. Commissioner,* 85 T.C. 485, 498 (1985); *Peninsula Steel Products & Equipment Co. v. Commissioner,* 78 T.C. at 1058; *Garth v. Commissioner,* 56 T.C. 610, 618 (1971); *Fort Howard Paper Co. v. Commissioner,* 49 T.C. 275, 286-287 (1967).

---

[13]*Shasta Industries, Inc. v. Commissioner,* T.C. Memo. 1986-377. We note that the Court of Appeals for the Federal Circuit also adopted our position with respect to the use of inventories under the completed contract method. *Spang Industries, Inc. v. United States,* 791 F.2d 906 (Fed. Cir. 1986), revg. 6 Cl. Ct. 38 (1984).

*Depreciation of ACRS Property Acquired From Two Rivers*

The final issue we will consider in the instant case concerns respondent's disallowance of a portion of the depreciation expense deducted by Hamilton in its taxable year ending June 30, 1982. Hamilton commenced business on June 28, 1982, when it acquired the assets of Two Rivers. Included in such assets were 3-year ACRS property with a cost of $2,048,993 and 5-year ACRS property with a cost of $10,659,386. As Hamilton was a member of the Mayline consolidated group and joined in such group's consolidated return, Hamilton was required to adopt Mayline's taxable year for its first year. Sec. 1.1502-76(a)(1), Income Tax Regs. Consequently, Hamilton's first taxable year was the period running from June 28, 1982, to June 30, 1982. Secs. 443(a), 7701(a)(23).

Petitioner, however, claimed the full amount of depreciation with respect to such property that would have been allowable had Hamilton been in existence for all of Mayline's taxable year. Under the authority of section 168(f)(5), respondent disallowed all but one-twelfth of the depreciation claimed. Petitioner argues that the depreciation allowance should be determined with reference to the length of time that Mayline, and not Hamilton, was in existence. Respondent, however, points out that the consolidated return regulations require that the initial calculation of the taxable income of members of a consolidated group is to be made as if such members were separate corporations. Sec. 1.1502-11, and -12, Income Tax Regs. Some items are figured at the consolidated group level, but the depreciation allowance is not one of them. See sec. 1.1502-12, Income Tax Regs. Consequently, the amount of depreciation allowable for Hamilton's first taxable year is to be determined as if Hamilton were a separate corporation and not a member of a consolidated group.

Under section 168, as it existed during the year in issue, the depreciation deduction for recovery property in any taxable year equaled the unadjusted basis of such property multiplied by the applicable percentage for the class and year of service of such property. Sec. 168(b). Such percentage was applicable regardless of the month during the year

that the property was placed in service.[14] See Staff of the Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act, at 79 (J. Comm. Print 1981). Section 168(f)(5) provides that, where a taxpayer's taxable year is less than 12 months, the amount of depreciation otherwise allowable under section 168 is reduced by the same proportion which the number of months in the short taxable year bears to a full year. Hence, if a taxpayer's short taxable year is 1 month or less, the taxpayer would be entitled to only one-twelfth of the depreciation otherwise allowable under section 168 for such year. Consequently, we find that respondent properly reduced the deduction claimed by petitioner for the short taxable year, and we sustain his determination with respect to such issue.

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

---

[14]The foregoing rules have been changed by the Tax Reform Act of 1986. See sec. 201(a), Pub. L. 99-514, 100 Stat. 2121.